THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
HARVEY DUPREY, Also Known as HARVEY RIOS, Appel-
lant.

First Department, December 8, 1983

#### APPEARANCES OF COUNSEL

*Thomas P. Legenhausen* and *Hillard Wiese* of counsel
(*William E. Hellerstein,* attorney), for appellant.

*William N. Fordes* of counsel (*John Latella* with him on
the brief; *Robert M. Morgenthau, District Attorney,* attor-
ney), for respondent.

#### OPINION OF THE COURT

MURPHY, P. J.

The overriding question presented upon appeal is
whether the motion to suppress was correctly denied.

Police Officer James Serra was the only witness to
testify at the suppression hearing. He had received a
"steer" that narcotics were being sold in apartment 4-D at
622 East 11th Street. About 8:30 P.M., he went to that
apartment with Officers Gonzalez and Benson. The three
officers were dressed in civilian clothes.

Serra and his partners knocked on the door and asked for cocaine. The occupant of the apartment stated that he was "out" of narcotics; he told the officers to return later. The officers knocked again and announced their identity. The occupant then admitted them into the apartment. The officers did not conduct a thorough search of the apartment because it was sparsely furnished. Narcotics were not found in the apartment.

As the officers were speaking to the occupant, three individuals arrived separately at the apartment door. The first and second individuals knocked on the door and requested cocaine. They then passed money through a small hole in the door. The officers arrested these two individuals for "loitering for the purpose of a controlled substance" [*sic*]. Serra was not certain whether these two individuals were subsequently released.

Defendant Duprey was the third individual to arrive at the door. He asked for four "C"; the "C" meant cocaine. When Serra opened the door, the defendant handed him $19. The defendant was then arrested for loitering in the first degree (Penal Law, § 240.36). Serra escorted the defendant across the room to the area where Officer Gonzalez was standing. The defendant turned his back on Officer Gonzalez and he made a shaking motion with both hands near his waistband. Serra alerted Gonzalez who immediately removed a loaded pistol from the defendant's waistband.

At the close of the hearing the defense counsel argued that the defendant and the other two men were arrested without a sufficient basis. The defense counsel did not explicitly maintain that loitering in the first degree was not a proper predicate for the defendant's arrest. Likewise, the prosecutor did not attempt to establish that the defendant's arrest was based upon a violation of loitering in the first degree or any other specific crime. The prosecutor emphasized that the officers knew that the defendant had come to the apartment to buy narcotics.

The suppression court made the following findings of fact and conclusions of law:

"It appears from the testimony that the defendant was told that he was being arrested for loitering. When Officer

Serra saw the defendant's hands go towards his waistband it was reasonable for the said officer to assume that the defendant had a weapon in his waistband since common experience of the police officers often show that the waistband is one of the places where guns are usually found.

"At any rate, under these circumstances, the police officer had a right to ascertain whether or not the defendant had a weapon in his waistband. And, under these circumstances, he had probable cause to feel under the circumstances that the lives of the police officers there should be protected. Inasmuch as the defendant was told that he was being arrested for loitering, as such, would have undoubtedly been made at the Precinct [sic].

"In any event, and under the circumstances, I do not see how any of the constitutional rights of the defendant were violated by the search in the apartment in question.

"Under these circumstances, I find that the motion to suppress the physical evidence obtained in this case should be denied in its entirety".

The critical issue presented upon this appeal is whether the police had probable cause to arrest the defendant upon his entrance into the apartment (*Matter of Kwok T.,* 43 NY2d 213, 218). If the initial arrest was valid, the officers clearly had the right to make a limited self-protective search for a weapon. (*People v Bruce,* 78 AD2d 169.)

The officers justified the arrest upon the defendant's purported violation of loitering in the first degree (Penal Law, § 240.36). This statute reads as follows:

"A person is guilty of loitering in the first degree when he loiters or remains in any place with one or more persons for the purpose of unlawfully using or possessing a controlled substance, as defined in section 220.00 of this chapter.

"Loitering in the first degree is a class B misdemeanor."

There was no evidence introduced at the suppression hearing that the defendant had remained in the hallway or any other part of the building with the other arrestees. Since that element of the crime was lacking, the officers could not validly arrest the defendant for loitering in the first degree.

The suppression court did not state the exact basis upon which it validated the arrest. To the extent that its decision suggests that the defendant was lawfully arrested under the loitering statute, it is incorrect. Nonetheless, it should be remembered that the prosecutor emphasized that the defendant had been arrested as he attempted to buy narcotics. Moreover, this court may consider the evidence adduced at the hearing to determine whether there were articulable facts to support the arrest.

Thus, the more narrow issue presented is whether an individual may be convicted of the crime of attempting to possess narcotics. It is true that an individual may plead guilty to the crime of attempted possession of a dangerous substance (see, e.g., *People v Schroeter*, 44 AD2d 830). Nonetheless, aside from the plea setting, a conceptual problem exists as to whether an individual may attempt to possess narcotics. The position may be taken that the crime of attempted possession is a hypothetical or fictional crime. A person, it may be argued, must either "possess" or "not possess" narcotics. As a corollary, the argument may be advanced that an individual cannot "attempt to possess". If that crime does not exist, the officers in this proceeding would not have a lawful basis for arresting the defendant.

Sections 110.00 and 110.10 of the Penal Law are controlling upon this point. Because of their importance in disposing of this appeal, they are set forth in their entirety:

"§ 110.00 Attempt to commit a crime

"A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

"§ 110.10 Attempt to commit a crime; no defense

"If the conduct in which a person engages otherwise constitutes an attempt to commit a crime pursuant to section 110.00, it is no defense to a prosecution for such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be."

The defendant's conduct indicated that he attempted to possess narcotics under the criteria set forth in section 110.00 of the Penal Law. First, the defendant's intent to possess the narcotics was evident from (i) his request for four "C" and (ii) his payment of $19 to the officers. Second, those same overt acts constituted conduct which tended to effect the crime of possession of narcotics. Those overt acts were necessary intermediate steps taken toward the completion of the crime of possession.

It could be argued that attempted possession was factually and legally impossible under the actual circumstances of this case. The officers did not have any drugs to sell the defendant. However, under section 110.10 of the Penal Law, it is the attendant circumstances, as believed by the defendant, that control. The defendant believed that he was in the process of buying drugs from the officers. Therefore, they could properly arrest him for attempted possession of narcotics.

There are very few cases that have even addressed this subject. The reported cases present facts that are significantly different from those found in this proceeding. There are only two New York decisions that are worthy of mention.

In *People v Vandercook* (99 Misc 2d 876), the defendant was indicted for criminal possession of marihuana in the first degree (Penal Law, § 221.30). Upon a motion to dismiss the indictment for legal insufficiency, the County Court found that it would be impossible for the prosecution to establish that the marihuana possessed had a "pure weight" of over 10 pounds. The County Court, however, refused to dismiss the indictment because the prosecution could prove at trial that the defendant intended to possess more than 10 pounds "pure weight". While *Vandercook* may be readily distinguished on various grounds, it does buttress the conclusion that an individual may be convicted of attempted possession of a narcotic even though he does not possess that narcotic.

The other New York decision is found in *People v Van Heffner* (NYLJ, Feb. 10, 1977, p 14, col 2, RYAN, J.). Van Heffner was charged, *inter alia,* with (i) attempting to commit possession and (ii) attempting to commit posses-

sion with intent to sell. The defendant actually possessed ledocaine, a noncontrolled substance; he did not possess cocaine. In dismissing these two counts in the indictment, Criminal Term found that the defendant had not taken any overt act to effect the commission of those possessory crimes. Therefore, he was found to be not guilty of an attempt under section 110.00 of the Penal Law. The instant case may be distinguished from *Van Heffner* by the fact that defendant Duprey did commit overt acts tending to effect the commission of a possessory crime.

There are three foreign State decisions that should also be mentioned. The closest analogy to the instant case may be drawn with *People v Siu* (126 Cal App 2d 41). Defendant Siu thought he was buying heroin from an undercover deputy sheriff. Instead, he bought talcum powder from the undercover officer. After a nonjury trial, Siu was convicted of attempted possession. The District Court of Appeal affirmed the conviction on the ground that the defendant believed that he was buying heroin. Similarly, the defendant in this proceeding believed that he was buying cocaine. As was discussed above, the defendant's subjective belief controlled his guilt in that regard.

In *State v McElroy* (128 Ariz 315), the defendant was lawfully searched by a deputy sheriff. During the search, the deputy sheriff found a plastic bag. Defendant McElroy told the deputy sheriff that the bag contained amphetamines. A laboratory test later established that the pills were not amphetamines. Again, defendant McElroy was found guilty of attempted possession after a nonjury trial. In affirming, the Supreme Court of Arizona stressed that "[t]he defendant believed he had the ability to accomplish the crime of possession, and the fact that the pills were not dangerous drugs does not erase his attempt to possess" (128 Ariz, at p 317). McElroy was found guilty even though there was no overt act on his part. To that extent, the decision in *McElroy* seems to run counter to that in *Van Heffner* (*supra*).

Finally, in *People v Maciel* (39 Col App 149), a deputy sheriff observed defendant Maciel searching an area which contained two bottles of heroin in pill form. The Colorado Court of Appeals, in affirming, found that the jury could

have reasonably inferred that the defendant intended to possess a narcotic. Defendant Duprey's conduct may be compared to that of defendant Maciel insofar as they both sought but did not obtain narcotics.

Case law, meager as it is, sustains the analysis that the officers had probable cause to arrest defendant Duprey for attempted possession of narcotics. The search for the weapon was validly made as incidental to a lawful arrest. The motion to suppress was properly denied. We find no merit to the other issues raised by the defendant.

Accordingly, the judgment of the Supreme Court, New York County (LEONFORTE, J., at suppression hearing; CAHN, J., at trial), convicting him after trial of criminal possession of a weapon in the third degree and sentencing him to an indeterminate term of imprisonment of from 3 to 6 years, should be affirmed.

SULLIVAN, J. (concurring). While I agree that the motion to suppress was properly denied the majority opinion, in my view, unduly restricts the concept of probable cause as typified by its formulation of the critical issue upon which the legality of the arrest turns — whether an individual may be convicted of the crime of attempting to possess narcotics. This is an inquiry more appropriate to a motion addressed to the sufficiency of the evidence in support of an indictment than to a determination of the existence of probable cause.

The relevant inquiry is whether the officers had probable cause to believe that a crime had been or was being committed. (*Draper v United States,* 358 US 307, 313; *Brinegar v United States,* 338 US 160, 175; *People v Brady,* 16 NY2d 186, 189; *People v Coffey,* 12 NY2d 443, 451, cert den 376 US 916.) "[Probable cause] is not a matter for technical rules or tight and exact definition." (*People v Marshall,* 13 NY2d 28, 34; see, also, *Carroll v United States,* 267 US 132, 161.) Nor is it necessary that a warrantless arrest be supported by evidence "[sufficient] to convict" (*Wong Sun v United States,* 371 US 471, 479; see, also, *United States v Ventresca,* 380 US 102, 107), or even that a prima facie showing of criminal activity be made out (*Spinelli v United States,* 393 US 410, 419). Rather, the standard of probable cause is the probability of criminal

activity. (*Beck v Ohio,* 379 US 89, 96.) What is required is a reasonable ground for belief in guilt. (*Carroll v United States,* 267 US, at p 161.) The oft-quoted test of probable cause is whether an officer in good faith believes that a person is guilty of an offense and whether the officer's belief rests on such grounds as would, under the circumstances, induce an ordinarily prudent and cautious man to believe likewise. (*Beck v Ohio,* 379 US, at p 91; *Ker v California,* 374 US 23, 34-35; *Husty v United States,* 282 US 694, 700-701; *People v Coffey,* 12 NY2d, at p 451.)

Viewing the evidence in the light of these principles, it is clear that the undercover officers had probable cause to arrest defendant. He had presented himself at an apartment where drugs were being sold, asked for cocaine, and handed Officer Serra, whom he believed to be a drug dealer, $19. In such circumstances, the officers acted reasonably in immediately placing him under arrest since, certainly, they had probable cause to believe that some crime had been committed. Probable cause requires only a belief "that some crime may have been committed". (*People v Schneider,* 58 AD2d 817, 818; *People v Merola,* 30 AD2d 963; *People v Messina,* 21 AD2d 821; *People v Cassone,* 20 AD2d 118, affd 14 NY2d 798, cert den 379 US 892.) That the officers considered the arrest to be for loitering in the first degree, rather than for some other offense, such as attempted criminal possession of a controlled substance, did not detract from the legality of their conduct since an adequate factual basis existed to justify an arrest. (See *People v Smith,* 62 Misc 2d 473, 477.)

In any event, defendant's arrest for loitering in the first degree was proper. Section 240.36 of the Penal Law provides that a person is guilty of loitering in the first degree "when he loiters or remains in any place with one or more persons for the purpose of unlawfully using or possessing a controlled substance". Defendant claims that he did not violate the statute because, at most, he remained at the apartment door for only a few seconds, which is insufficient to constitute a crime of loitering. He also argues that since he came to the apartment door alone, he was not acting "with one or more persons", as the statute requires. The evidence adduced at the suppression hearing, however,

demonstrates that the police officers had reasonable cause to believe that defendant's conduct did indeed violate the statute.

Defendant went to the apartment to purchase cocaine. He remained outside the door long enough to knock and to ask for "four C". When Serra opened the door defendant handed him the purchase money. The interval of time defendant had to wait at the apartment door in a public hallway for his supplier to deliver a quantity of cocaine satisfies the requisite factual predicate for loitering. Although the waiting period was brief, it was sufficient to bring the statutory prohibition into operation.

Equally unpersuasive is the argument that defendant's conduct did not violate the loitering statute because he was not acting "with one or more persons". Since defendant was arrested within moments of two other people who had come to the apartment to buy cocaine, the police officers could reasonably conclude that defendant had been loitering in or around the apartment building with these other buyers and had waited his turn so as not to create a waiting line in the hallway, thereby drawing attention to the drug trafficking which was taking place there.

Thus, defendant's arrest for loitering was proper. The evidence at the suppression hearing established that the police had probable cause to believe that defendant was attempting to possess cocaine and was waiting in and around his supplier's apartment building with others to make a purchase. Consequently, defendant's motion to suppress the pistol seized from his waistband pursuant to that arrest was properly denied.

Ross and CARRO, JJ., concur with MURPHY, P. J.; KUP-FERMAN, J., concurs in result only; SULLIVAN, J., concurs in a separate opinion.

Judgment, Supreme Court, New York County, rendered on November 24, 1981, unanimously affirmed.