OPINION OF THE COURT
Joseph G. Golia, J.
Defendant was arrested and charged in a felony complaint with criminal possession of a controlled substance in the fifth degree, a class D felony.
The charges were subsequently reduced by the prosecutor to criminal possession of a controlled substance in the *394 seventh degree, a class A misdemeanor. This charge remained until the matter proceeded to trial, at which time, the prosecutor moved for, and the court granted, the further reduction of the charge to attempted criminal possession of a controlled substance in the seventh degree, a class B misdemeanor.
The defendant, reminiscent of Ulysses’ plight of the Scylla and Charybdis, was caught between opposing the application and maintaining his right to a jury trial, or consenting to the reduction of the charge which, while lessening the defendant’s exposure to incarceration, removes the right to a trial by jury. The defendant under these circumstances reluctantly consented to the reduction.
After the commencement of the trial, without a jury, the defendant moved to dismiss the information on the grounds that:
1. The prosecution cannot charge an attempted crime as a lesser included offense of the completed crime where any reasonable view of the evidence would establish the completed crime;
2. Attempted criminal possession of a controlled substance is an illusory crime; and
3. The reduction of the within charge from an A misdemeanor to a B misdemeanor was calculated to deprive the defendant of a jury trial, and if the intent of the People was to reduce the charges it should have been done at an earlier stage of the proceedings, not at the Jury Trial Calendar Part.
The prosecution contends that:
1. The present law permits a charge of attempt even though the People may prove the completed crime;
2. Attempted criminal possession is not an illusory crime under the current Penal Law; and
3. The prosecutor has complete discretion to prosecute the matter in any manner he deems fit.
The defendant’s first contention, that the People may not charge attempted criminal possession of a controlled substance, because the substantive crime was allegedly *395 consummated, is not borne out in the law and therefore not dispositive of the motion.
The Legislature by enacting the current section 110.00 of the Penal Law (L 1965, ch 1030) omitted the requirement that in order for someone to be guilty of an attempt, the underlying crime must not have been consummated. The omission of this requirement permits the People to overprove their case.
This interpretation of the statute advanced in McKinney’s Practice Commentaries by Arnold Hechtman (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 110.00, pp 309-310) was cited, with approval, by the Court of Appeals in People v Richette (33 NY2d 42, 46). Therefore the court finds the defendant’s first contention to be without merit.
The court, in turning its attention to the defendant’s second contention, is confronted with a more problematic argument. That being those instances when the District Attorney employs the simple expedient of reducing the pending charges by adding the term “attempt” to the said charge. In so doing he wanders into the murky waters of illusory crimes. These waters, while having been crossed by judicial fiat, have never been fully explored.
During the pendency of the instant matter, the Appellate Division of this, the First Judicial Department, reached the issue of the propriety of the charge of attempted criminal possession in the matter of People v Duprey (98 AD2d 110). The court held, therein (p 116), that “Case law, meager as it is, sustains the analysis that the officers had probable cause to arrest defendant Duprey for attempted possession of narcotics.”
However, the court in so doing did acknowledge that “a conceptual problem exists as to whether an individual may attempt to possess narcotics. The position may be taken that the crime of attempted possession is a hypothetical or fictional crime.” (People v Duprey, supra, p 113.)
Although this court is constrained to follow the holding in Duprey (supra), the court nevertheless feels compelled to examine and analyze the crime of attempted possession.
*396 The law, as we know it, dwells within a system of applied logic. The criminal law is firmly rooted in the ground of statutory proscriptions as elaborated by case law.
Application of a criminal law provision merges the legislative intent that a particular activity be proscribed with judicial concern that the law, as enforced, fits fairly within our constitutional fabric. Substantive crimes, then, must be specific and must not overstep the bounds of logic. When the crime charged is an attempt to commit a substantive crime, the same constitutional requirements apply.
The statutes which proscribe criminal possession speak to the state of being in possession of an object which by its very nature (controlled substance) or by its intended use (burglar’s tools) make possession of such item unlawful. The statutory proscription focuses squarely on the unlawfulness of the object as being the predicate for the unlawful possession. The defendant’s state of being in possession of the object constitutes the entire actus reus of the crime.
Short of being in possession of the proscribed object, there is no unique act or series of acts which logically necessitates the state of being in possession. It is uncontroverted that the statutory proscription of attempt requires an intent to commit a crime. The attractive concept of approaching ever closer and closer to the forbidden object fails when one appreciates that the mere desire to possess is not criminal, and a constructive possession is a completed possession even though the object is not in hand.
One may desire to possess, and one may try to insure that they come into possession of the object, but, until one has come into possession, either actually or constructively, there has been no actus reus of a possessory crime.
The Legislature enacted the crime of “attempt” so as to proscribe those activities which logically precede and would inevitably result in a consummated crime. It provided a needed flexibility to address the myriad of circumstances which present themselves to the criminal justice system. Thus, a baseball bat or a knife which is swung at an individual with the intent to cause physical injury but which fails to hit its mark is properly addressed by the *397 charge of attempted assault. It being inevitable that, but for some intervening cause, the actual assault would have been consummated.
The “attempt” provisions (Penal Law, § 110.00 et seq.) are thus the manifestation of the Legislature’s desire to address a wrongful act which has occurred but which has not resulted in the underlying substantive crime being consummated.
Grafting the crime of attempt onto an underlying substantive crime must be done in a manner so that the attempt flows logically backwards from that substantive crime. Acts of attempt must lead conceptually, logically and inevitably to the proscribed act which constitutes the substantive crime. By permitting the crime of attempt to be grafted onto any substantive crime so as to address the dynamic nature of criminal activity, the Legislature cannot be said to have intended to stretch the elastic of the crime of attempt beyond all prior logical and conceptual boundaries of the Penal Law. This results in criminalizing the desire to achieve a state of being.
Section 110.10 of the Penal Law specifically allows for a very narrow proscription of “attempted possession”. That being those instances where the possessory state actually exists, but the object possessed is of dubious illegality. These circumstances are commonly known as the “impossibility” class of possessory crimes.
The illusory crime of “attempted possession”, as manifested in the instant case, is fundamentally different from the charge of “attempted possession” where the object is clearly possessed, but the accused has unknowingly come into possession of something which is entirely innocent. In such an instance the defendant could successfully interpose the affirmative defense of impossibility to the charge of criminal possession (as opposed to attempted possession).
The Legislature responded to this perceived “loophole” by expressly precluding the defense of impossibility (Penal Law, § 110.10). This means a person can be guilty of attempting to commit a crime even though that crime cannot be consummated. It is important to note that the proscribed attempt in this statutory anomaly is not an *398 attempt to achieve a possessory state but rather a failed attempt at achieving the desired quality of the object possessed. The most obvious example being the possession of milk sugar instead of heroin. (The court is duly concerned that the innocent possession of items which are not per se unlawful that would fall within this class of crimes are without limit.)
Constitutional considerations require that a substantive crime be capable of commission and be specifically proscribed in the law. The union of attempt and the consummated crime must be smooth and inherently logical. Ab-. sent the impossibility class of attempted possession (see Penal Law, § 110.10), should the prosecutor try to demonstrate that the accused attempted to be in possession of the unlawful object, the fabric of logic snaps. There is no inevitable continuity between the desire to be in possession and the state of being in possession.
This court is not unmindful of the perceived problems resulting from the above analysis concerning interrupted drug transactions or undercover drug sales where an actual exchange has not taken place. The perceived problems are, however, unfounded. These criminal activities are fully proscribed by the conspiracy (Penal Law, § 105.00 et seq.) statutes as presently constituted (see People v Schwimmer, 66 AD2d 91).
Irrespective of this court’s foregoing analysis it is nevertheless bound by the Appellate Division’s holding in People v Duprey (supra). But for the Appellate Division’s holding, this court would have found otherwise.
With respect to the last issue confronting this court, it should be noted that this case is not unique in terms of the People’s actions, which might be described as “prosecution by reduction.” This practice consists of continuously reducing the charges pending against a defendant in order to alternately avoid prosecutorial time requirements and to expedite a trial without a jury if a plea cannot be negotiated.
The court recognizes that the People have the right and power to prosecute a case in any manner they see fit as long as it does not devolve into prosecutorial vindictiveness.
*399 While individuals certainly may be penalized for violating the law, they just as certainly may not be punished for exercising a protected statutory or constitutional right. To punish such persons because they have done what the law plainly allows them to do is a due process violation “of the most basic sort”. (Bordenkircher v Hayes, 434 US 357,363.)
The Bordenkircher court addressed an allegation of prosecutorial vindictiveness in a pretrial setting. It was uncontested that the prosecutor threatened the defendant with the imposition of additional charges if the defendant did not plead guilty to the charges pending. Upon the defendant’s refusal to accept the plea offered, the prosecutor made good on his threat. The court held, however, that there was no due process violation in the “give-and-take” of plea negotiation, so long as the accused “is free to accept or reject the prosecution’s offer” (Bordenkircher v Hayes, supra, p 363).
In the case at bar, the People, rather than adding charges, reduced the original charge several times. The last such reduction was in the Jury Trial Part on the eve of trial, and had the effect of denying the defendant’s constitutional right to a trial by jury. It is the denial of this right to which the defendant now objects.
A prosecutor should remain free, before trial, to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution, and his “initial decision should not freeze [his] future conduct” (United States v Goodwin, 457 US 368, 382). Nevertheless there must be certain limits.
It is undeniable that the right to a trial by jury is a fundamental right guaranteed by the Constitution. The purpose is to insert a disinterested, and presumably unbiased, entity into the criminal proceedings so as to avoid any potential abuse of power.
As a result of conflicting concerns, for the rights of a defendant and the necessity to assure the sv/ift administration of justice, the Supreme Court established a threshold requirement of six months’ incarceration before the right to a trial by jury attaches (Baldwin v New York, 399 US 66).
*400 This six-month requirement was not set forth as a hard and fast rule (see Baldwin v New York, supra). Even so, the New York State Legislature enacted the present CPL 340.40 (L 1971, ch 815, § 2) which provides, in pertinent part, that in New York City “a misdemeanor for which the authorized term of imprisonment is not more than six months must be a single judge trial” (CPL 340.40, subd 2; emphasis added; see, also, Matter of Morgenthau v Erlbaum, 59 NY2d 143).
This court does not now address the constitutionality of CPL 340.40 in its prohibition of jury trials for class B misdemeanors (as did Matter of Morgenthau v Erlbaum, supra). This court is, however, concerned with the People’s unfettered use of their prosecutorial privilege and the prejudicial results which might flow therefrom.
In the instant case, the defendant was originally charged with a class D felony. These charges were reduced to a class A misdemeanor and the case appeared several times in the All Purpose Part of this court for the purpose of completing pretrial discovery, conducting hearings and negotiating a plea, if possible. The pretrial proceeding having been completed and having failed to reach a negotiated plea, this matter was marked ready for trial and referred to the Jury Trial Calendar Part of this court for a trial before a jury.
After appearing several times on the Jury Part Ready Calendar, and not having been reached by the court, the People again reduced the charge to a class B misdemeanor and requested that the case be sent back to the All Purpose Part for an immediate trial before a Judge, without a jury.
The court recognizes that the dynamics of a criminal proceeding involves much posturing, positioning and negotiating in the legitimate pursuit of a just result for all concerned. However, under the circumstances described above and without good cause shown by the People, the court finds the reduction of the within charge and the resulting avoidance of a jury trial to be an abuse of the prosecutorial privilege.
The instant matter is distinguished from Bordenkircher and Goodwin (supra), in the importance of the bargaining chip used.
*401 In both those cases the defendants were faced with the choice of offering a guilty plea or facing additional charges and enhanced punishment, which were in all other respects proper. Whereas the alternatives certainly presented the defendants with a difficult decision, the Supreme Court held such practice to be a proper pretrial bargaining tool. Those defendants were, nevertheless, entitled to a trial by jury under all circumstances.
The instant case, however, presents a significantly different situation. The choice presented to the defendant herein is to plead guilty on an offer of incarceration of less than 90 days or face a reduction in the charges which would result in the loss of his constitutional right to a trial by jury.
In Bordenkircher and Goodwin (supra), the defendants’ refusal to acquiesce in a plea would only result in their facing additional charges, which could have been brought in the first instance, but retaining the right to a jury trial. This defendant, however, is faced with the loss of a fundamental constitutional right.
In weighing the defendant’s right to a jury trial against the People’s privilege to prosecute a matter as they see fit, the court finds that the People may not force a defendant to gamble with such a basic constitutional right in order to clear their calendars of burdensome matters. The matter would be viewed differently had the People reduced from the felony directly to the B misdemeanor, or had they done so at an earlier stage of the proceeding in the All Purpose Part, or had they presented good cause for doing so at this late juncture.
Therefore the court finds the reduction of the charge to a B misdemeanor with the concomitant loss of the right to a jury trial to be prejudicial to the defendant herein, and an abuse of discretion.
Accordingly, and in view of all of the above, defendant’s motion to dismiss is granted.