OPINION OF THE COURT
Laura Visitacion-Lewis, J.
Defendant was arrested on October 9, 1994 and charged with the crime of theft of services (Penal Law § 165.15 [3]), a class A misdemeanor. The complaint filed in connection therewith alleged, in pertinent part, as follows: "[Defendant, with intent to obtain public transportation service without payment of the lawful charge therefor * * * attempted to obtain *500 such service and avoid * * * payment therefor by * * * entering] the Transit Authority system without permission or authority, and without paying the required fare, by pulling the wheel of a turnstile backwards and slipping through.”
A preprinted form titled "supporting deposition (CPL 100.20)/New York City Transit Police Department/Turnstile Offenses”, listing the offenses of criminal tampering, petit larceny, and theft of service (sic), was filed and served in support of the Criminal Court complaint. On it, boxes preceding the first two listed misdemeanors were checked to indicate "N[ot]/Applicable]”, while the box marked theft of service was checked "Yes”. Nowhere on this standard form — which is the routinely filed supporting deposition in subway theft of services cases, and which includes sections for the arresting officer to indicate drug and other recoveries, as well as whether the defendant resisted arrest, made statements or was the subject of a "showup” identification — was there any mention of the crime of criminal trespass.
Indeed, the supporting deposition form provides, under the heading, theft of service, various means by which such crime may be committed, including "walking through an exit gate”, "pulling the wheel of a turnstile backwards and slipping through” (checked off in the instant matter), and "using a transit pass key to open a locked gate leading into the transit system”.
On November 29, 1994, the date the matter was scheduled for a jury trial, the People sought to "reduce” the sole charge in the complaint to a class B misdemeanor, criminal trespass in the third degree (Penal Law § 140.10 [a]), and filed a prosecutor’s information charging that crime. The case was thereafter sent to Jury Part 3 for an immediate bench trial, where defendant moved before me to dismiss for facial insufficiency or, alternatively, for an adjournment to file motions in connection with the newly filed prosecutor’s information. I granted defendant’s motion to dismiss the prosecutor’s information as facially insufficient. This writing constitutes my written and expanded decision.[1]
As a threshold matter, I note that the very filing of the *501 prosecutor’s information in this case was both statutorily and constitutionally impermissible. Although the law permits the filing of a prosecutor’s information at any time prior to the commencement of trial, such accusatory instrument must be limited to offenses that are "supported * * * by the allegations of the factual part of the original information and/or any supporting depositions”. (CPL 100.50 [2]; People v Consolidated Edison Co., 154 Misc 2d 610, 613-614 [Crim Ct, NY County 1992]; People v Twine, 121 Misc 2d 762 [Crim Ct, NY County 1983].) Here, the newly filed prosecutor’s information contained correspondingly new factual allegations tailored to meet the elements of trespass. Thus, it was now asserted, inter alia, that the defendant "knowingly entered and remained unlawfully upon real property which was fenced or otherwise enclosed in a manner designed to exclude intruders * * * [and] unauthorized persons [in that he] entered and remained in the transit system at 42nd street [sic] and 8th avenue [sic] without permission or authority, and without paying the required fare, by pulling the wheel of a turnstile backwards and slipping through.”
This conjoining of original factual allegations with those necessary to satisfy the elements of criminal trespass, neither obscured nor legitimized the assertion of new facts to support the new crime.[2]
The conspicuous absence of any trespass-related allegations was underscored by the supporting deposition filed by the People with the original complaint. Used by the Transit Police Department in subway fare evasion cases, this form lists three prosecutable offenses, none of which is trespass. Moreover, to the extent that any reference is made to the breaching of subway gates, it comes under the category of theft of service and, in this case, neither of the two applicable boxes was checked. Thus, the prosecutor’s information asserting, as it did, facts beyond the sworn evidentiary allegations of the original complaint and its supporting deposition, was improperly filed.
Indeed, the newly charged crime constituted a change in *502 the theory of prosecution, effected as the case was literally in the process of being sent out for a jury trial. The defendant having been noticed that the crime for which he was to be tried was theft of services, the gravamen of which is an unlawful taking,[3] 4he was now confronted with having to defend against criminal trespass in the third degree, the gravamen of which is unauthorized presence or occupation.[4] This last-minute change in trial strategy was a violation of fundamental tenets of notice and due process. (See, People v Iannone, 45 NY2d 589, 599 [1978]; People v Colon, 139 Misc 2d 1053, 1060-1061 [Crim Ct, NY County 1988]; People v Salley, 133 Misc 2d 447 [Nassau Dist Ct 1986]; CPL 200.70, 100.45 [2].) The "twofold purpose of an information * * * is to inform defendant of the nature of the charge and the acts constituting it so that he may prepare for trial and protect himself from being tried again for the same offense [citations omitted]”. (People v Miles, 64 NY2d 731, 732-733 [1984].)
I further note that the prosecution’s maneuverings, on the very date of trial, to "reduce” the charges and prosecute defendant on a class B misdemeanor were undertaken for the express purpose of depriving him of a jury trial. While the reduction of a class A misdemeanor to a class B misdemeanor may, in appropriate circumstances, be a legitimate exercise of the prosecution’s prerogative to choose the crimes for which a defendant will be prosecuted (see, People v Di Falco, 44 NY2d 482, 486 [1978]; People v Bowman, 88 Misc 2d 50, 52 [Crim Ct, NY County 1976]), such discretion is not unfettered but, rather, assumes a good-faith assessment of the evidence and the strength of a case, or some other lawful basis. (See, e.g., People v Williams, 120 Misc 2d 68, 79 [Crim Ct, Bronx County 1983] [reductions for the purposes of enhancing plea bargaining and speedy adjudication cited with approval].) When exer *503 cised for an improper purpose, this prosecutorial discretion is abused. (See, People v Vasquez, 133 Misc 2d 963, 969 [Sup Ct, Queens County 1986]; People v Rodriguez, 124 Misc 2d 393, 398-400 [Crim Ct, Bronx County 1984].) Where, as here, the sole and express purpose of effecting a conversion from an A misdemeanor to a B misdemeanor is to deny a defendant his fundamental constitutional right to a trial by jury, such an abuse of discretion has surely occurred. (People v Rodriguez, supra.)
Finally, the filing of a prosecutor’s information charging defendant with trespass in the third degree, on the basis of alleged fare evasion, constitutes a strained and untenable interpretation of the elements of that crime.
The laws of trespass and burglary, subsumed under article 140 of the Penal Law, evolved from what one commentator has termed "as ancient a form of legal procedure as any in the common law”. (Callaghan’s Crim Law in New York § 21.12 [Groble 3d ed].) Known as quare clausum fregit, this civil wrong was the common-law action for unlawful intrusion upon real property. (Id.) The criminalization of such unlawful intrusion produced laws that, as further evolved and refined, have resulted in modern day statutes encompassing burglary, with its added element of intent to commit a crime within the area breached, as well as trespass.
True to its progenitor, article 140 retains as its core the concept that the "foundation of the offense[s of burglary and trespass] is entering or remaining unlawfully on property.” (Callaghan’s Crim Law, op. cit., § 21:07.) Or, as another commentator has noted, "[t]he true essence of criminal trespass or burglary should be intrusion into premises without license or privilege.” (Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 140.00, at 340 [1967].)
In contradistinction, article 165 of the Penal Law was specifically enacted to address theft offenses that the Legislature determined could not be prosecuted as larcenies. Thus, the proposed legislation for theft of services noted that "[s]ince 'services’ are not 'property’, 'theft’ of services does not constitute larceny; and, if any such conduct is to be proscribed, it must be by special statute”. (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 170.20, at 356 [emphasis added].) Addressing the specific subdivision of the proposed law that was *504 to cover nonpayment of subway fares, the Commission wrote, "Subdivision 3 includes certain existing offenses ([P.L. §§ 1990 (1), (2); 1990-b]) but broadens the overall crime to encompass improper acquisition or fee-avoidance of all forms of 'public transportation service’ rather than of the limited kinds presently specified.” (Id., at 356.)
That the Legislature determined a "special statute” was required to cover criminal conduct consisting, inter alia, of subway fare evasion, reflects not only its view that such an offense was not addressed by existing theft laws, but that there were no other statutes under which this offense could otherwise be prosecuted. The legislative intent regarding the nature of this crime is further apparent in its designation of the new article as, "Other Offenses Relating to Theft”.
As applied to the case at bar, the wisdom of the Legislature in eschewing the trespass statutes for the prosecution of subway fare evasion is well borne out. First, it has long been recognized that the very existence of a public transportation facility, such as a train station or bus terminal, "implies an invitation or license to enter”. (People v Bell, 306 NY 110, 113 [1953]; People v Velazquez, 77 Misc 2d 749, 753 [Crim Ct, NY County 1974]; see also, People v Nunez, 106 Misc 2d 236 [Crim Ct, Queens County 1980], affd 114 Misc 2d 573.) Different from privately owned premises that provide public recreation or entertainment, such as theatres, ballparks, and amusement grounds, subway stations and transportation facilities generally, which are entered by "[thousands of commuters, shoppers and other people * * * for a variety of reasons daily * * * are not places of restricted public access”. (People v Bright, 71 NY2d 376, 387 [1988]; Streetwatch v National R. R. Passenger Corp., 1995 WL 70681, 8 [SD NY 1995].) Rather, they "are more analogous to the public street than to a specific area of restricted public access.” (People v Bright, supra, at 386; see, People v De Clemente, 110 Misc 2d 762, 765 [Crim Ct, Queens County 1981]; Penal Law § 240.00 [1], [2] [defining "public place” and "transportation facility”, respectively].)
Article 140 provides, and the Court of Appeals has consistently reaffirmed, that the license and privilege to enter premises open to the public exist "regardless of the intent of the person who enters or remains”. (People v Brown, 25 NY2d 374, 376 [1969] [emphasis in original].) Thus, a prosecution for trespass in a subway station, which is premised solely upon factual allegations of fare evasion, is insufficient as a matter *505 of law. As the Court of Appeals has stated, "it is clear that the element of absence of license, or unlawfulness of the accused’s presence on the premises, is entirely independent of the element of criminal intent”, and these "two entirely separate elements” may not be "merged.” (People v Graves, 76 NY2d 16, 18, 22 [1990]; Penal Law § 140.00 [5]; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 140.00, at 14, 16 [1975].)
Nor may a trespass conviction "be predicated upon an unlawful entry, absent a lawful order not to enter”. (People v Brown, 25 NY2d, at 376, supra [emphasis in original]; see, People v Powell, 58 NY2d 1009 [1983]; Penal Law § 140.00 [5].) In addition, the license and privilege to enter premises open to the public may not be terminated absent a lawful order, personally communicated by an appropriate authority. (People v Leonard, 62 NY2d 404, 408 [1984].) No such directive is claimed to have been given in the instant matter.
That the crimes of theft of services and trespass are separate and distinct in both content and purpose, and may not simply be substituted or interchanged, is well illustrated by the case of People v Licata (28 NY2d 113 [1971]), where the Court of Appeals upheld the trespass conviction of a man who had entered a race track, despite the fact that he had paid admission. Noting that the defendant had violated a previously issued "not to enter” order and then refused to leave when directed to do so, the Court rejected his claim that payment of the admission fee entitled him to entry.
Conversely, conduct consisting solely of entry into the subway station without paying the fare, while unquestionably constituting the crime theft of services, does not fall within the intendment, or meet the elements, of trespass. To the extent that gates and turnstiles are in place at subway station entrances, they serve both to announce that public transportation is not free and to provide a mechanism for receipt of payment by subway token. Any member of the public who unlawfully breaches these structures may be made accountable for his or her failure to pay the fare. The laws of trespass, designed to keep out intruders and punish for presence in or occupation of an area, are singularly inappropriate for redressing this wrongdoing. The Court of Appeals has traditionally and consistently condemned the strained construction of penal statutes, noting that they "must be read 'according to the fair import of their terms [so as] to promote justice and effect the objects of the law’ ”. (People v Hedgeman, 70 NY2d *506 533, 537 [1987], quoting People v Ditta, 52 NY2d 657, 660 [1981]; People v Miller, 70 NY2d 903, 906 [1987]; Penal Law § 5.00.) We are further instructed that, in construing criminal statutes, the "courts must be scrupulous in insuring that penal responsibility is not 'extended beyond the fair scope of the statutory mandate’ ”. (People v Hedgeman, supra, at 537, quoting People v Wood, 8 NY2d 48, 51 [I960].) For these reasons, the provisions of a penal statute "should not be stretched to fit the facts of a particular case regardless of their nature, and a conviction cannot be justified unless the facts fit into the statute.” (People v Buscemi, 89 Misc 2d 174, 176 [Suffolk Dist Ct 1977].)
Accordingly, defendant’s motion to dismiss is granted.

. In light of the fact that a legally sufficient accusatory instrument is a fundamental and nonwaivable jurisdictional predicate to a valid criminal prosecution (People v Hall, 48 NY2d 927 [1979], rearg denied 49 NY2d 918; People v Harper, 37 NY2d 96 [1975]; CPL 170.35 [3] [b]; 100.40 [1]), determination on the motion to dismiss could not be reserved until after trial.

. While CPL 100.50 (1) permits the filing of a superseding information charging the same offense with enhanced factual allegations, and subdivision (2) (applicable herein) permits the filing of a prosecutor’s information containing new offenses based on the original factual allegations, neither subdivision of CPL 100.50 provides for an information that can "supersede” on new facts and new charges. (People v Armstrong, 154 Misc 2d 834, 838 [Crim Ct, NY County 1992].)

. As applicable herein, the elements of this crime are as follows:
"[a] person is guilty of theft of services when:
"(3) [w]ith intent to obtain * * * subway * * * or any other public transportation service without payment of the lawful charge thereof * * * he obtains or attempts to obtain such service or avoids or attempts to avoid payment thereof by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay”. (Penal Law § 165.15.)

. In pertinent part, Penal Law § 140.10 (a) reads as follows:
"[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property
"(a) which is fenced or otherwise enclosed in a manner designed to exclude intruders”.