[906 NYS2d 753]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JOSHUA
LAUREANO, Defendant.

Criminal Court of the City of New York, New York County, August 23, 2010

### APPEARANCES OF COUNSEL

*Legal Aid Society* (*Steven Banks and Melissa Kaplan* of
counsel), for defendant. *Cyrus R. Vance, Jr., District Attorney*
(*Lisa Franchini* of counsel), for plaintiff.

### OPINION OF THE COURT

FELICIA A. MENNIN, J.

The issue under consideration in this case is whether the subway platform beyond the turnstile entrance to the New York City Transit Authority (NYCTA) is a "public place" within the context of the criminal trespass statutes of New York's Penal Law. The defendant, Joshua Laureano, is charged with theft of services (Penal Law § 165.15 [3]) and criminal trespass in the third degree (Penal Law § 140.10). He moves for an order dismissing the criminal trespass count as facially insufficient pursuant to Criminal Procedure Law § 170.30 (1) (a), § 100.15 (3) and § 100.40 (1) (a), as well as for other relief addressed below.

## Facial Insufficiency

The accusatory instrument charges the defendant with criminal trespass in the third degree. The factual allegations portion of the complaint reads as follows:

"Deponent [Joseph Marazzo] states on information and belief, the source of which is the supporting deposition of Police Officer Israel Ramirez, shield No.xxxxx of the Transit Division District 01 [sic] to be filed with this instrument, that defendant committed the above states offenses:

"Police Officer Israel Ramirez, shield #xxxxx of the Transit Division District 01 [sic] observed the defendant [on February 25, 2010, at about 10:00 hours, at 59th Street and Eighth Avenue, Booth N-51, New York County] enter the subway station beyond the turnstiles, which is an area enclosed by the turnstiles and gates in a manner designed to exclude those who do not pay the required fare, without permission or authority to do so and without paying the required fare, by using a Student MetroCard which was issued for the exclusive use of another person and not the defendant. Defendant's age is nineteen (19), the number on the card is xxxxxxxxxx-xxxxxxxx and the name on the card is Kiomary Laureano.

"Defendant stated in the presence of Police Officer Israel Ramirez, shield #xxxxx of the Transit Division District 01 [sic] (in substance): I BORROWED THE CARD FROM MY SISTER TO BRING MY

GIRL TO SCHOOL."[1]

Criminal trespass in the third degree, pursuant to Penal Law § 140.10, provides in pertinent part:

> "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property
> "(a) which is fenced or otherwise enclosed in a manner designed to exclude intruders . . . ."

Article 140 defines "[e]nter or remain unlawfully" as follows:

> "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."
> (Penal Law § 140.00 [5].)

The defendant argues that the criminal trespass count fails to make out lack of permission or authority to enter or remain, an element of all trespass offenses. (*See* Penal Law art 140.) The defendant contends that the subway area *beyond* the turnstiles is a public place because the NYCTA is a public entity. Therefore, he contends he had a right to be there unless he lawfully and personally had been ordered to leave.

The court disagrees. It is true that the New York City subway system, administered by the NYCTA, is publicly owned, offered as a public service, and was created to perform a governmental function. (Public Authorities Law § 1202 [2]; *Matter of New York Pub. Interest Research Group Straphangers Campaign v Metropolitan Transp. Auth.*, 309 AD2d 127, 134 [1st Dept 2003].)[2] However, the Legislature has given the NYCTA the power to require that a fare be paid to use those fa-

---

1. The complaint is supported by a signed form deposition of Police Officer Ramirez containing factual allegations consistent with those attributed to him in the complaint.

2. The NYCTA is a public benefit corporation and a subsidiary agency of the Metropolitan Transportation Authority (MTA), and operates under its own statutory authority as well as certain provisions of the MTA Act. (*See* Public Authorities Law §§ 1200-1221, 1261-1279.)

cilities. (*See* Public Authorities Law § 1204 [5-a].)[3] The NYCTA requires that a fare to use the subway system be paid at a turnstile. The area beyond the turnstiles is not open to members of the public—unless they swipe a valid fare card to pass inside. "Places which require an admission ticket to enter, such as race tracks and ball parks, are not deemed open to the public, and thus a person who enters without the requisite ticket enters without license or privilege." (Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 140.00, at 13 [2010 ed]; *see People v Licata*, 28 NY2d 113, 115 n 2 [1971].) The presence of a turnstile inside a subway station makes the real property within "fenced or otherwise enclosed in a manner designed to exclude intruders," e.g., persons who have not paid a fare. (Penal Law § 140.10 [a]; *see People v Lang*, 14 Misc 3d 869, 870 [Crim Ct, NY County 2007].) Therefore, entry into the subway system beyond the turnstiles without paying the fare constitutes criminal trespass in the third degree. (*People v Thiam*, 16 Misc 3d 136[A], 2007 NY Slip Op 51665[U] [App Term, 1st Dept 2007], *lv denied* 9 NY3d 993 [2007].)

The defendant's reliance on *People v Bright* (71 NY2d 376 [1988]) and *People v Brown* (25 NY2d 374 [1969]) for the proposition that the subway beyond the turnstile is a public place is misplaced. *Bright* decided a consolidated appeal in which each defendant argued that the police had no right to arrest him for loitering in a "transportation facility" pursuant to Penal Law § 240.35 (7). The Court of Appeals held that subdivision of Penal Law § 240.35 to be unconstitutionally overbroad and vague. (*People v Bright*, 71 NY2d at 387.) It is certainly true, as the defendant argues, that *Bright* deemed Pennsylvania Station and the Port Authority Bus Terminal, where the defendants were found, "public places." But remaining in a concourse of those facilities, as the defendants in *Bright* had, does not require possession of a ticket. Neither was found on a railroad train or

3. Public Authorities Law § 1204 (5-a) provides in relevant part that the NYCTA is empowered to:

"make, amend and repeal rules governing the conduct and safety of the public as it may deem necessary, convenient or desirable for the use and operation of the transit facilities under its jurisdiction, including without limitation rules relating to the protection or maintenance of such facilities, the conduct and safety of the public, the payment of fares or other lawful charges for the use of such facilities, the presentation or display of documentation permitting free passage, reduced fare passage or full fare passage on such facilities and the protection of the revenue of the authority."

bus, entry to which requires a ticket. Indeed, the *Bright* court noted that both facilities are multi-use, providing access to railroad trains, buses and the subway system, and contain shops and restaurants open to travelers and nontravelers alike. The subway platform area beyond the turnstiles is part of a different kind of system. That is the area where people who have paid their fares wait to board the subway trains. A person may only lawfully be or remain in such area if he or she has paid a fare.[4]

Similarly, *People v Brown* addresses a situation even more remote from the one encountered in the instant case. There the defendant's conviction of Penal Law § 140.10, which was at that time entitled criminal trespass in the second degree, was reversed because the location was the office of an insurance brokerage. The Court in *Brown* held that the defendant had lawfully entered the office because it was open to the public and he had left when ordered to leave by the broker.

The defendant's alleged use of a nontransferable student Metro-Card belonging to another person, to which defendant was not entitled, to enter the subway past the turnstile establishes for pleading purposes that he did not pay the required fare and thus was not entitled to be inside the NYCTA facility beyond the turnstiles. These allegations adequately set forth the elements of the crime of criminal trespass in the third degree. Accordingly, the defendant's motion for an order dismissing the count of criminal trespass in the third degree as facially insufficient is hereby denied.

## Suppression of Tangible Property

The defendant has set forth facts that put into question whether the police had probable cause to search and seize his person and property. (*See People v Mendoza*, 82 NY2d 415, 428-429 [1993].) The court orders that an evidentiary (*Mapp/Dunaway*) hearing shall be conducted to determine whether a warrantless seizure of the defendant's property occurred without probable cause and whether that seizure bore any additional poisonous fruit, testimonial or tangible.

---

4. Equally unavailing to the defendant in the instant case is *People v Pratt* (164 Misc 2d 498 [Crim Ct, NY County 1995]). *Pratt* does hold that the subway area beyond the turnstiles is a public place but is directly in conflict with the later and binding decision of the Appellate Term in *Thiam*, cited in the text above.

## Suppression of Statements

The defendant's motion for an order suppressing any and all statements by him is granted to the extent that an evidentiary (*Huntley*) hearing shall be conducted to resolve a factual issue, whether the statements were made involuntarily as defined in CPL 60.45.

If there are additional statements which the People obtained from the defendant and which they do not intend to offer in evidence in their own case, the People are directed to disclose the content of those statements to the defendant. Furthermore the *Huntley* hearing shall be expanded to consider the voluntariness of those statements in anticipation that the People will seek to use them to impeach the defendant's trial testimony.

The defendant's motion for an order suppressing statements that were obtained from him as the fruit of an unlawful seizure of his person is granted to the extent that an evidentiary (*Dunaway*) hearing shall be conducted. The defendant has laid a proper factual foundation for such an inquiry. (*See People v Mendoza*, 82 NY2d 415, 428-429 [1993].)

## Preclusion of Statements, Identification Testimony, Impeachment by Prior Convictions and/or Bad Acts

Each of the defendant's motions (1) to preclude the introduction of statements allegedly made by him and identification testimony, timely notice of which has not been given; and (2) to preclude the introduction of evidence of any uncharged crimes committed by him in the People's case-in-chief and/or to impeach him by alleged prior convictions or bad acts, is referred to the trial court for decision.

## Reservation of Rights

The defendant's motion to reserve the right to make further motions is hereby denied. However, upon good cause shown, the court will permit him to make additional motions.

## Reciprocal Discovery

The People's motion to compel limited reciprocal discovery pursuant to CPL 250.20 is granted.