Jasen, J.
The agent in charge of plainclothes detectives at Aqueduct Race Track gave the defendant a written notice to leave the premises forthwith.. The notice ordered the defendant not to enter or remain at any time ’ ’ upon the premises of the track[1], and that in the event he failed to comply with the order, he would be subject to summary arrest for criminal trespass. The defendant^ upon receiving the notice, threw it on the floor and said, “ I’ll be back.”
Four months later, a detective for the Thoroughbred Racing Bureau at Aqueduct, saw the defendant enter the track. Since he knew the defendant was barred from the track, the detective *115 approached the defendant to bring to mind the order of exclusion. Defendant responded with an obscenity and started running. The detective gave chase, and after apprehending the defendant, placed him under arrest for criminal trespass. After trial, the defendant was convicted and sentenced to five days in jail, from which judgment he now appeals.
Under section 140.05 of the Penal Law, as it then read, criminal trespass in the third degree is committed when one “ knowingly enters or remains unlawfully in or upon premises. ’ ’ Section 140.00 (subd. 5) defines “ Enter or remain unlawfully ” as entry by a person who "is not licensed or privileged to do so.”[2]
The rule is well established that the operator of a race track can “ exclude a person from attending its races s * * as long as the exclusion is not founded on race, creed, color or national origin.” (Madden v. Queens County Jockey Club, 296 N. Y. 249, 253, cert. den. 332 U. S. 761.) Moreover, the rules and regulations of the New York State Racing Commission specifically provide: “ [Undesirable persons to be ejected.] No person who is known or reputed to be a bookmaker or a vagrant within the meaning of the statutes of the State of New York, or a fugitive from justice, or whose conduct at a race track in New York or elsewhere, is or has been improper, obnoxious, unbecoming or detrimental to the best interests of racing, shall enter or remain upon the premises of any licensed association conducting a race meeting under the jurisdiction of the commission; and all such persons shall upon discovery or recognition be forthwith ejected [19 NYCRR 4.46]. ’ ’ The regulation imposes upon the licensed association the burden of carefully screening its patrons, and excluding or expelling any undesirable persons. (See Matter of Vaintraub v. New York Racing Assn., 28 A D 2d 660; Gottlieb v. Sullivan County Harness Racing Assn., 25 A D 2d 798.)
Not only did the association in this case eject the defendant from the race track, as it had a right to do, but it also served a written notice directing him not to enter the Aqueduct Race Track at any time in the future. There can be no doubt that this *116 order “ not to enter ” the race track was violated by the defendant at the time he entered the track.
The defendant, however, argues that the sale of an admission ticket to him by an employee of the association on the date of his arrest authorized him to enter the race track and had the effect of countermanding the previous order of the association ‘ ‘ not to enter ’ ’.
While it is ordinarily true that the purchase of an admission ticket to a race track or a place of amusement entitles one to enter the premises, this right is not without limitation, and, of course, is subject to revocation. (Aaron v. Ward, 203 N. Y. 351, 355.)
Where, as here, a purchaser of an admission ticket is explicitly excluded as an undersirable person from the track by a lawful written order, the mere purchase of a ticket does not have the effect of nullifying the existing exclusion order since there is lacking the necessary contractual requirement of a “ meeting of minds ” at the time of the sale of the ticket. (Collister v. Hayman, 183 N. Y. 250, 253; Said v. Butt, [1920] 3 K. B. 497; see, also, Greenfeld v. Maryland Jockey Club, 190 Md. 96, 101; Powell v. Weber-Stair Co., 125 S. W. 255 [Ky.]; 1 Williston, Contracts, § 95, p. 349.) The cashier, whose primary function is to sell tickets to anyone paying the admission price, is not required, nor does he have the authority to bar prospective patrons as undesirables. The responsibility to screen patrons and to exclude or expel any undesirable person lies exclusively with the track protective bureau who had issued the original ‘ ‘ not to enter ’ ’ order.
Relevant policy considerations would also seem to weigh heavily in the result we reach. The State Racing Commission regulation (19 NYCRR 4.46) is explicit that “ No person who is known or reputed to be a bookmaker * * * shall enter * * * upon the premises of any licensed * * * race meeting ”. (Emphasis added.) To hold that the sale of a ticket revokes an existing lawful order “ not to enter ”, would prevent effective enforcement of the commission’s regulation barring certain undesirable persons from race tracks. Under such an interpretation, an undesirable person would never be subject to criminal prosecution for violating the “ not to enter ” order, but would merely risk expulsion from the race track upon discovery on the *117 premises. This, in our view, would place an unreasonable burden upon the track officials in enforcing a reasonable and desirable policy of our State.
In short, defendant was guilty of criminal trespass when he entered the track premises with knowledge that he was not “ licensed or privileged to do so.”
Moreover, as noted above, criminal trespass is defined as knowingly entering or remaining unlawfully in or upon the premises of another. The word ‘ remain ’ in the phrase enter or remain ’ is designed to be applicable to cases in which a person enters with ‘ license or privilege ’ but remains on the premises after the termination of such license or privilege.” (Practice Commentary, Penal Law, § 140.00, pp. 341-342.)
The detective who arrested the defendant testified that shortly after defendant came through the turnstile, he stated to him, “ Vito, where you go; you know the boss said if you come in here, we’re locking you up in jail.” The detective, who was present when the original written notice was served upon the defendant, was, in effect, giving the defendant another notice to leave the premises. In short, he revoked the defendant’s license, which, of course, was permissible, even though defendant was already upon the premises. (Aaron v. Ward, supra; see, also, Madden v. Queens County Jockey Club, supra.) The defendant’s subsequent actions — e.g., refusal to obey the request to leave and running away inside the track—were sufficient to establish criminal trespass under the alternative provision of section 140.05. (Cf. Rager v. McCloskey, 305 N. Y. 75, 79.)
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Scileppi, Bergan, Breitel and Gibson concur; Judge Burke taking no part.
Judgment affirmed.

. The defendant was barred from Aqueduct because he had been convicted of bookmaking.

. The second sentence of subdivision 5 is not applicable on this appeal since a race track is not deemed a place “open to the public”. (See Practice Commentary by Denzer and McQuillan, McKinney’s Cons. Laws of N. Y., Book 39; Penal Law, § 140.00, p. 343; cf. People v. Brown, 25 N Y 2d 374.)