OPINION OF THE COURT
Seymour Rotker, J.
This case is before this court for decision after trial. The case involves a Port Authority Police arrest of an individual for trespass at an airport facility. The case merits attention in a written opinion for two reasons. First, the public policy of protecting the patrons of our international airport facilities has led to a plethora of arrests of limousine operators and steerers for trespass on Port Authority property. As a consequence, the Criminal Court of Queens County, by virtue of having two airport facilities within its jurisdiction, has been inundated with trials of these cases. Second, the nature and circumstances of the arrests, as spelled out below, require some judicial standards to be set forth in order to guide law enforcement in the handling of similar cases in futuro. Public policy considerations for the protection of visitors to our great metropolis cannot be used as an expedient to avoid constitutional due process requirements.
Based upon the credible testimony in evidence and memoranda submitted by the parties, this court makes the following findings of fact and conclusions of law:
*237 FINDINGS OF FACT
The defendant, Jose M. Nunez, was tried before this court on December 27,1979 for a violation of section 140.05 of the Penal Law, trespass. The People called two witnesses, Port Authority Police Officers Robert Loos, Shield No. 1064 and Evan Goodstein, Shield No. 412.
Officer Loos testified that on October 30, 1979 he was assigned to plainclothes duty at the International Airport.
By stipulation of the parties, a copy of the notice served on the defendant on October 4, 1979, was placed into evidence. The notice, set out in English and Spanish is set out in pertinent part as follows:
“This 4th day of Oct. 1979 you have been found in violation of Port Authority Rules and Regulations and are hereby ordered to leave these premises, including the terminal building, sidewalks, and passenger pick-up areas, forthwith.
“You are further ordered not to enter or remain at any time upon these premises.
“If you fail to comply with this order or if you re-enter the premises at any time, including the terminal building, sidewalks, and passenger pick-up areas, you will be arrested, charged with an offense of trespass and subject to penalties prescribed by law.
“officer’s comments :
“Above suspect observed at IAB loitering of soliciting fares. Said subject advised of the above order and understands same. Subject advised A/O’s of his mother’s arrival on an incoming flight at above location. A check of the airlines proved negative & subject statement not verified.
Refused - Individual Served (Signature)
Jose M. Nunez Individual Served-Print Name
THE PORT AUTHORITY OF NY & NJ issued and personally communicoted this 4 day of Oct at 11:15 am/ pm.
PO E. Goodstein - Issuing Officer PO J. Torres #1351 Witnessing Officer. ”
*238 On cross-examination, both officers indicated that there are numerous tenants in the International Arrivals Building, each of whom has independent authority to invite individuals to enter the terminal building and to utilize their services. The services include a bank, a bar, a restaurant, a barbershop, a gift shop, post office, drug store, currency exchange and various airlines. There is also an observation deck open to the public. The record at trial is devoid of any evidence that the defendant availed himself of any of these facilities on October 30,1979.
CONCLUSIONS OF LAW
“A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.” (Penal Law, § 140.05.) “ ‘Premises’ includes the term ‘building’ * * * and any real property.” (Penal Law, § 140.00, subd 1.) “A person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person” (Penal Law, § 140.00, subd 5; emphasis added).
The sole question for determination is whether the presence of the defendant on October 30, 1979, on the sidewalk areas of the International Arrivals Building, constitutes a violation of a lawful order of an authorized person, personally communicated, not to enter or remain upon those premises.
The Port Authority of New York and New Jersey has authority to operate air terminals within the Port of New York District. (L 1947, _ck 802, § 1.) An air terminal is -defined as “developments operated by the port authority consisting of runways, hangars, control towers, ramps, wharves, bulkheads, buildings, structures, parking areas, improvements, facilities or other real property necessary, convenient or desirable for the landing, taking off, accommodation and servicing of aircraft of all types, including but not limited to airplanes, airships, dirigibles, helicopters, *239 gliders, amphibians, seaplanes, or any other contrivance now or hereafter used for the navigation of or flight in air or space, operated by carriers engaged in the transportation of passengers or cargo, or for the loading, unloading, interchange or transfer of such passengers or their baggage, or such cargo, or otherwise for the accommodation, use or convenience of such passengers, or such carriers or their employees, or for the landing, taking off, accommodation and servicing of aircraft owned or operated by persons other than carriers.” (Emphasis supplied; L 1951, ch 206, § 1.)
Chapter 206 of the Laws of 1951 established rules and regulations governing traffic (including pedestrian traffic) at airport facilities. The following subdivisions of the Port Authority Rules and Regulations are set forth as having a bearing on the instant case and the authority of the Port Authority Police to issue an order and/or to make an arrest; sections 211/0-08, 211/0-09, 211/0-19.01, 211/0-19.03, and especially sections 220/0-10 and 230/0-05. (The Port of New York and New Jersey Airport Rules and Regulations, as revised Oct. 1,1977.)
The contention proffered by defense counsel that the order to stay off the premises was not established by the People to be an authorized order is clearly without merit in light of the authority of the Port Authority and its police agents over the entire air terminal facility.
An order served upon an individual excluding him from premises may be given effect and a subsequent conviction for trespass may be had for a violation of such order. (People v Licata, 28 NY2d 113.) Such notice is effective to prohibit future acts. However, the order and its scope must in some way be related to the nature of the facilities covered by the order. In this regard, the three-pronged analysis set forth by the court in People v Wolf (63 Misc 2d 178, 180) is enlightening. Clearly, a private person has the right to bar an individual from private property. Similarly, one can bar an individual from a quasi-private building, such as a department store (Matter of Florette D., 58 Misc 2d 1093), so long as the exclusion is not founded on race, creed, color, or national origin. (Madden v Queens County Jockey Club, 296 NY 249, 253, cert den 332 US 761.) However, in *240 order to bar a person from a public building or facility,[1] that is, one “maintained by the public for use by the public on public affairs and business”, there must be a greater showing than mere presence in violation of an order not to enter. (People v Wolf, supra, p 180.) It is contended in Wolf that innocent entry is not punishable as an act of trespass. It is only unlawful entering/remaining which triggers liability for trespass
In the instant case, one must analyze the alleged presence of the defendant not only from the standpoint of whether or not such presence was lawful. An individual on public property for a legitimate purpose should not be liable for trespass, even where the presence is in violation of a lawful order. (People v Wolf, supra.) It is the responsibility of the People to establish more than mere presence in order to sustain their burden.
Since the notice to the defendant through the lawful order is a necessary element of the crime charged, one must examine the basis, for the issuance of such order ab initia, as well as the basis for the arrest for the alleged violation of the order. Particularly where a public facility is involved, herein a major international air transport gateway, due process requirements must be met before one can issue an unlimited order excluding an individual.[2] To avoid arbitrary action by the police, the issuance of an order must be based on more than whim or caprice, and more than surmise and supposition by the issuing officer.
In a case such as this, however, the issuance of a lawful order of exclusion should be based upon such probable cause as would be developed by the officer’s observations, a reasonable prudent man standard.
*241 This probable cause standard for issuance of the order is particularly necessary because the order is an element of the offense of trespass and provides the predicate for an arrest with additional facts.
From the facts adduced at trial, it is clear that an order was issued to the defendant on October 4, 1979, following observation of the defendant “at IAB loitering and soliciting fares”. The order was issued after observation and after a check of the defendant’s reason for his presence at the facility “proved negative”. The order issued was lawful in that it was issued by an officer with authority based upon observations and investigation which provided information sufficient to establish probable cause for arrest.
In order to find liability for trespass on the October 30, 1979 incident, it is necessary to establish more than the mere presence of the accused. The facts adduced clearly establish more than mere presence. There was testimony that the officer had an uninterrupted view of the defendant for approximately 10 minutes and that the defendant was observed approaching several people going through the two exit doorways. These actions by the defendant constitute sufficient additional facts when coupled with the lawful order of October 4 to establish an unlawful entry or remaining for purposes of section 140.05 of the Penal Law. There was probable cause for the arrest of the defendant on October 30 based upon the notice issued and the indicia of independent unlawful activity inherent in the defendant’s actions.
In light of the credible testimony adduced at trial and after review of memoranda submitted by both sides, this court finds the defendant, Jose M. Nunez, guilty of trespass in violation of section 140.05 of the Penal Law, for his presence at the International Arrivals Building on October 30, 1979, in violation of a personally communicated order of October 4,1979 to stay off the premises.

. While the Port Authority is a quasi-governmental authority at best, clearly its functions and facilities are public and for public purpose.

, It is the scope of the order issued which raises concern, but which went unexplored by either side. The quasi-public nature of the Port Authority and the intended public use of its facilities make this scope question important. Does a Port Authority police officer, in the exercise of his duties, after making an observation, have a right to issue a blanket order barring an individual from a public transportation facility supported by taxpayer funds? Does a later enforcement of that order, as represented by the case at bar, result in a deprivation of liberty if the order was issued without notice and an opportunity to be heard? These constitutional issues are not properly before this court, but might be an appropriate subject for appellate review.