OPINION OF THE COURT
Melvin Glass, J.
On February 15, 1980 Port Authority Police Officer Mark Winslow was on duty at J. F. Kennedy International Airport. He observed the defendant inside the lobby of the Pan American arrivals area, approaching people as they exited the customs portion of the building. The defendant spoke with these individuals, all of whom were carrying luggage. Officer Winslow exited the building and saw the defendant approach an elderly gentleman. The defendant asked the man if he wanted a taxi. The man refused. Officer Winslow then approached the defendant and asked the defendant to accompany him to the administration building. At that building, the defendant was read a warning, the substance of which ordered him to leave the airport and not to enter again.
Richard Gallagher is a security supervisor in the employ of Pan American. He is authorized by Pan American to prevent individuals from soliciting at the airport terminal. *763 In this capacity, he is in frequent contact with the Port Authority Police, who aid in the policing of the airport terminal. On December 30, 1980, at approximately 5:45 p.m., Mr. Gallagher was on duty at J. F. Kennedy Airport. He saw the defendant speaking to several people as they came out of the customs area of the terminal. Based upon this observation, he called the Port Authority Police. Port Authority Police Officer James Rae responded. He saw the defendant standing against a wall adjacent to a doorway where passengers exit after clearing customs. Shortly thereafter, the defendant walked out of the terminal building and was apprehended by Officer Rae. When stopped, the defendant stated to the officer, “You got me.” He was subsequently placed under arrest for violating section 140.10 of the Penal Law after it was ascertained that the defendant had been ordered to stay out of the airport on February 15,1980. Trial of the matter was held before this court without a jury.
Initially it must be determined whether section 140.05 of the Penal Law, trespass, or section 140.10 of the Penal Law, criminal trespass in the third degree, is applicable in this situation. Section 140.05 of the Penal Law, the lowest degree of trespass, is defined as follows: “A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.” This section would appear, by a process of elimination, to apply to vacant real property, as the more aggravated forms of trespass refer to a “building” (Penal Law, § 140.10) or “dwelling” (Penal Law, § 140.15). However, the term “premises” as used in section 140.05 of the Penal Law is defined to “include[s] the term ‘building’ ” (Penal Law, § 140.00 , subd 1 ). The criminal act is alleged to have been committed within a building. The Practice Commentaries to section 140.00 of the Penal Law indicate that the term “building” within the definition of premises was included for plea purposes as a lesser included offense of the more serious degrees of trespass. (Hechtman, McKinney’s Cons Laws of NY, Book 39, p 11.) The appropriate charge then, is section 140.10 of the Penal Law, as the alleged criminal act occurred within the Pan American Terminal, which is a building within the ordinary meaning of the word. (Penal Law, § 140.00, subd 2.)
*764 Section 140.10 of the Penal Law, criminal trespass in the third degree, is defined as follows: “A person is guilty of criminal trespass in the third degree (a) when he knowingly enters or remains unlawfully in a building or upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders”. When an individual enters upon premises which are open to the public, he “does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.” (Penal Law, § 140.00, subd 5.) Since the premises in question is open to the public, the defendant entered under a claim of legal right unless a lawful order not to remain was communicated to him and he defied such a lawful order. (People v Brown, 25 NY2d 374.) In determining the lawfulness of the order, one must necessarily examine the reason for the issuance of the initial order. Did the defendant’s conduct on February 15, 1980, which was the first occasion, justify the issuance of an order excluding him from the premises? From the testimony adduced at the trial, it is clear that the defendant was seen by Officer Winslow soliciting rides. In fact, the officer overheard the defendant asking an elderly gentleman if he wanted a taxi. The court is satisfied that this conduct is proscribed by the Port Authority rules and regulations and that the defendant was lawfully stopped for this activity and issued a warning. (See Rules and Regulations of the Port Authority of NY & NJ Airport, §§220/0-10, 230/0-05.)
The lawfulness of the initial order given must also be determined by examining its scope. The order given the defendant by the Port Authority Police was introduced into evidence and provided in part that the defendant was:
“ordered to leave the premises, including the terminal building sidewalk and passenger pick-up area, forthwith.
“You are further ordered not to enter or remain at any time upon the premises. If you fail to comply with this order or if you re-enter the premises at any time, including the' terminal building, sidewalks, and passenger pick-up areas, you will be arrested, charged with an offense of trespass and subject to penalties prescribed by law.” (Emphasis supplied.)
*765 This order placed a blanket prohibition upon the defendant from ever returning to the airport. As indicated by defense counsel, such innocuous conduct as picking a family member up from an incoming flight or dropping someone off at the airport terminal would, by the terms of this order, subject the defendant to arrest. This order was defective in that it prohibited the defendant from engaging in lawful activities. The order should only prohibit the violation of Federal, State and local laws or rules of the Port Authority of New York and New Jersey.
The scope of an order excluding an individual from a particular area must be reasonably related to the nature of the area involved. (People v Nunez, 106 Misc 2d 236.) An individual may be excluded from premises and a subsequent conviction for trespass may be had for a violation of this order .(People v Licata, 28 NY2d 113.) Privately owned premises which provide public accommodation may exclude individuals provided the exclusion is not based upon a violation of a civil right such as race, color, creed or national origin. (Madden v Queens County Jockey Club, 296 NY 249, cert den 332 US 761.) Accordingly, one may be convicted for mere presence upon the grounds of a department store after a prior order has been given excluding an individual from the premises. (Matter of Florette D., 58 Misc 2d 1093.) Likewise, a conviction for criminal trespass will lie where an individual enters a racetrack after an order to stay out has been issued to him as his status as a licensee has been revoked. (People v Licata, supra.) These decisions are based primarily upon the fact that the premises are private property. The status of the Port Authority Terminal, however, differs significantly from either a racetrack or a department store. It is a portal of entry into the United States for millions of people each year and its facilities contain numerous shops, restaurants and concessions. (People v Velazquez, 77 Misc 2d 749.) Where a facility is public in nature, an individual has a right to enter and remain in that building unless he engages in some unlawful activity. Innocent entry upon the Port Authority premises cannot be prohibited as this is violative of an individual’s right to travel freely. (Kent v Dulles, 357 US 116; Zemel v Rusk, 381 US 1; United States v Guest, 383 *766 US 745.) This right is part of the “liberty” of which a citizen cannot be deprived without due process of law. It has been described as being “as close to the heart of the individual as the choice of what he eats, or wears, or reads.” (Kent v Dulles, supra, at p 126.) Since this right is so basic, it cannot be curtailed on an arbitrary basis, even though a prior warning may have been given. It follows then that an arrest at the airport may only be made upon an ascertainable standard, i.e, probable cause. Given the public nature of the terminal, an arrest may be made only upon an observation of some illegal activity and not simply for setting foot on the premises after a warning has been issued. The effect of the prior warning, then, will satisfy the due process requirement of serving notice upon the defendant that any further illegality will subject him to arrest.
The warning given the defendant in this matter was defective in that it barred him absolutely and for all purposes from the airport facilities. It is the opinion of the court that the warning should be modified to forbid an individual’s entry upon the airport premises only for an illegal purpose.
Had the order in the instant case been lawful, all the other requirements necessary to satisfy the statute (Penal Law, § 140.10) would have been met. This defendant was seen on both February 15, 1980 and December 30, 1980 engaged in unlawful activity, i.e., offering rides to several individuals. The defendant’s conduct on both occasions provided the officers with a probable cause basis to effect an arrest. However, since the initial order given the defendant was unlawful, a crucial element of the Penal Law statute has not been met.
For the foregoing reasons, the court finds the defendant Michael De Clemente not guilty of section 140.10 of the Penal Law, criminal trespass.