OPINION OF THE COURT
Sheldon S. Levy, J.
When is a building “open to the public” within the meaning of the burglary statutes (Penal Law, § 140.00, subd 5; §§ 140.20, 140.25)?
The issue has not previously been directly addressed.
The question is, however, of particular importance to defendants charged with crimes of burglary in the second or third degrees since “a person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege” (Penal Law, § 140.00, subd 5; emphasis supplied), and “premises” includes the term “building” (Penal Law, § 140.00, subd 1).
Since the act of entering or remaining unlawfully is a prime element of all degrees of burglary (as well as of “trespass”), a person who does so with license or privilege, *681 cannot properly be convicted of any such offense. (There is no issue here as to the defying of a personally communicated, lawful order not to enter or remain [see Penal Law, § 140.00, subd 5].)
In this case, the defendant Richard Taylor was charged in a two-count indictment with crimes of burglary in the third degree and possession of burglar’s tools.
The allegations are that the defendant, on December 7, 1981, knowingly entered and remained unlawfully in a building — the former Bishop Dubois High School, now owned by the Holcombe Rucker Community League, Inc. — with the intent to commit the crime of larceny. The People further contend that he was found therein in possession of burglar’s tools — a crowbar, two wrenches and a hacksaw — and a brass push bar, apparently previously attached to a door of the building.
The defense attempted to justify defendant’s presence in the assertedly unoccupied premises with a claim, and with particularized proof, that the building was open to the public and, of course, to defendant as a member thereof.
The People, on the other hand, presented evidence which, in their view, clearly established that the building was a locked, guarded, private premises and was in no manner open to the public.
Nevertheless, the parties agreed that the former school building was not then being used as such; that it had been closed for almost two years; that windows were broken or were boarded up; that a gymnasium floor was warped and flooded because of lack of heat and missing water pipes; and that no notice or antitrespass signs had been posted.
The respective proofs differed sharply, however, as to whether a custodian was present; whether any lights were functioning in the building; whether all outer doors were closed and locked; and whether the basement — from which the defendant was seen emerging — was full of garbage and rotting books.
At the close of the evidence, the defendant orally sought a charge, under the “unlawful” element of the crime of burglary, which would encompass a legal definition of the phrase “open to the public”. Since, in the court’s opinion, *682 the defendant had sufficiently raised for jury consideration the issue as to whether the subject building was “open to the public” (Penal Law, § 140.00, subd 5), the request was approved. Providing the jury with lucid and comprehensible instructions on the subject, however, was another matter.
Heretofore, the phrase “open to the public” seems to have eluded judicial explication. In fact, with respect to any legal definition of the term, the courts apparently have taken a stance similar to that of former Supreme Court Justice Potter Stewart when he referred to hardcore pornography and insisted that “perhaps I could never succeed in intelligibly [defining it,] [b]ut I know it when I see it” (Jacobellis v Ohio, 378 US 184, 197).
In all previously reported cases, where free public access to a particular facility, building or premises was an issue, or was even considered, the question of whether or not it was open to the public was usually set forth in conclusory terms as a fait accompli and without benefit of a recounting of any of the various factors which might have been weighed by the fact finder before reaching such a threshold determination.
Accordingly, a group of specific buildings, premises or facilities have been held — almost as a matter of law — to have been “open to the public” at the time and on the occasion then in issue: airport (People v Nunez, 106 Misc 2d 236, 240; People v De Clemente, 110 Misc 2d 762, 764); apartment building basement (People v Ennis, 37 AD2d 573, affd 30 NY2d 535); building with job applicants’ invitational sign on exterior (People v Jones, 50 AD2d 750); bus terminal (People v Velazquez, 77 Misc 2d 749, 759); department store (Matter of Florette D., 58 Misc 2d 1093, 1097, revd on other grounds 33 AD2d 1028); insurance broker’s office (People v Brown, 25 NY2d 374, 376); migrant labor camp (People v Rewald, 65 Misc 2d 453, 456); motor inn (People v Letko, 60 AD2d 661, revd on other grounds 47 NY2d 257); portion of synagogue (People v Tuchinsky, 100 Misc 2d 521, 522); restaurant-bar of an inn (People v Niepoth, 55 AD2d 970); and welfare building (People v Wolf, 63 Misc 2d 178).
*683 Contrariwise, when judicial inquiry was made, a varying aggregation of specified premises were held not “open to the public”: enclosed waterfront pier (People v Merolla, 9 NY2d 62, 69); public school building (People v Johnson, 6 NY2d 549, 552); race track (People v Licata, 28 NY2d 113, 115); residence above an inn (People v Niepoth, 55 AD2d 970, supra); and television studios (People v Segal, 78 Misc 2d 944, 948; see, also, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, p 17 — “Theaters, ball parks and other places that require an admission ticket are not deemed ‘open to the public”’).
However, none of the cases aforesaid pointed to any statutory or analogous definition of the phrase “open to the public”; provided any workable, viable meaning for the term; or encompassed any general objective criteria by which a trier of facts — whether jury or Judge — could decide any disputed question pertaining thereto. Hopefully, that previous lack of judicial guidance will now be, at least partially, rectified.
In point of fact, any fixed definition of the subject expression which might be devised would obviously be impractical, cumbersome and inappropriate. However, a detailed listing of the diverse factors that a jury or Judge should consider and evaluate, where the issue properly has been raised, would appear to be desirable, useful and, indeed, necessary.
Consequently, the jury here was instructed that, in deciding whether the building in issue was “open to the public” on the date and at about the time of the alleged crime, they might consider such things as: the type of building involved; who owned the building; whether such ownership was posted or advertised; the physical condition and general appearance of the building; the purpose, if any, for which it was being used; whether members of the public were expressly or impliedly invited to enter; whether the public moved freely in and out of the building; whether doors and windows of the building were intact and were closed, locked or blocked; and whether any warning signs were conspicuously posted; as well as any other *684 evidence which might have some bearing on their determination in this regard.
. In addition, the jury was informed that if they should find that the building was open to the public, then the People would have failed to prove the element of unlawfulness beyond a reasonable doubt, and they must find the defendant not guilty of burglary in the third degree, even if all of the other elements of the crime have been proven to their satisfaction beyond a reasonable doubt.
Accordingly, a proper judicial response to the initial interrogatory as to when a building is “open to the public” within the meaning of the burglary statutes is: when the trier of facts finds it to be! But now, at least, specific criteria — each to be employed as and when appropriate to the evidence adduced — have been formulated to aid in that consideration.
The defendant’s request to charge is granted to the extent indicated.