OPINION OF THE COURT
Joseph A. Vita, J.
Defendant is charged with trespass, a violation of Penal *305 Law § 140.05. A nonjury trial in this action was held on August 28, 1986 and continued on September 12, 1986. The case is presently before this court for decision after trial.
The focus of the trial was on an attempt by a private nursing home to restrict the number of times the defendant was permitted to visit her mother, Mrs. Luisa Brunetti, who had been placed in the nursing home by her son, Salvatore Brunetti. The nursing home, based upon a direction of Mrs. Brunetti’s treating physician and its medical director, Dr. Silberstein, limited defendant’s visitations to two times per week. When defendant visited her mother at the home during a one-week period for a third time in violation of this restriction and refused to leave, she was arrested for trespass. The case merits a written opinion since it involves important questions of public policy, questions of due process and a unique factual setting.
Proof at trial established that Mrs. Luisa Brunetti, the mother of the defendant, had been placed in the Port Chester Nursing Home in April 1985 by her son, Salvatore Brunetti, and with the approval of her son and conservator, Rudy Brunetti. The nursing home is a private facility with beds for 160 patients. It is generally at full capacity. After this placement, in May 1985, the defendant at a meeting with Mary Edwards, the nursing home administrator, indicated that she wanted her mother removed from the home. Following the denial of this request the defendant made frequent complaints to the nursing home administration and staff regarding poor food and improper treatment of her mother.
Dr. Joseph Silberstein who is the medical director of the nursing home and also, since January 1986, has been Luisa Brunetti’s private physician, testified that he could not substantiate Mrs. Marino’s complaints regarding her mother’s alleged mistreatment. He described Mrs. Brunetti as being in her 80’s, fully ambulatory, with a number of ailments, including senility.
There was testimony at trial by Dr. Joseph Silberstein, Mary Edwards and Rudy Brunetti regarding the conduct of defendant when visiting her mother at the nursing home which the witnesses characterized as disruptive of the nursing home environment and disturbing to other patients. These incidents included the dumping of food from Mrs. Brunetti’s food tray; an incident where the defendant banged her head on the floor asking to be arrested while in the nursing home; *306 Mrs. Marino’s conduct in bringing food to her mother and feeding her in the main dining hall; giving her mother sweets before dinner; making complaints about her mother being poisoned by the nursing home food; making complaints to other families to encourage them to remove their parents from the nursing home; a racial epithet directed at an aide in the home; and an incident involving a nurse being pinched or pushed by the defendant. Proof of the latter two incidents was only by hearsay testimony.
Mrs. Marino essentially denied the incidents of disruption and testified as to her own observation of her mother’s mistreatment. Her allegations included poor food, poor room conditions and failure on the part of the nursing home staff to properly cleanse and care for her mother.
Rudolph Marino, the defendant’s husband, testified that on one occasion while in the nursing home visiting her mother, Mrs. Marino became very nervous, hysterical, she fell to the floor and banged her head on the floor because she was shaking.
Rudolph Brunetti, the conservator, testified that in April 1986 he mailed to Mary Edwards a letter requesting that visitors to the nursing home be limited to two hours, two days per week and that no food products be brought to Mrs. Brunetti without consent of the nursing home staff.
Dr. Silberstein testified that after consultation with Mary Edwards in May 1986, he made an order in the form of a hospital entry restricting Mrs. Marino’s visitation rights at the nursing home to two times per week. It was his opinion that the order was necessary to insure the well-being of his patient and also of the institution. He testified as to incidents where he observed both Mrs. Brunetti and other patients disturbed and agitated at a time when Mrs. Marino visited the facility and complained to the staff. Both Mary Edwards and Dr. Silberstein testified that their decision restricting visitation was made independently of the conservator’s request. After a meeting of Mary Edwards, the chief of nurses and other hospital staff members, Mrs. Marino, prior to July 11, 1986, was verbally advised by Mary Edwards of this visitation restriction and further, on July 11, 1986, was advised by telegram that her visits to her mother were limited to two times per week. The defendant acknowledged in her testimony receipt of notice from the nursing home administrator restricting her visitation privileges to two times per week.
*307 On July 14 and 15, 1986, Mrs. Marino visited her mother at the home. On July 17, 1986 she attempted a visit for a third time. Mary Edwards, the administrator, advised the defendant when she was in the facility for the third visit that she was in violation of doctor’s orders and was required to leave. Despite several warnings the defendant refused. The police were contacted and Mrs. Marino was arrested for trespass.
It is undisputed that at the time of her arrest, Mrs. Marino did not engage in any independent unlawful or disruptive conduct.
Mrs. Luisa Brunetti was not called by either side to testify as to any of the facts at issue in this proceeding.
Under Penal Law § 140.05 a person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises. "Premises” includes the term "building” and any real property. (Penal Law § 140.00 [1].) "A person 'enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person. ” (Penal Law § 140.00 [5]; emphasis added.)
It is clear from the testimony in the subject case that the Port Chester Nursing Home was "open to the public” within the meaning of the statute since family members and friends were readily permitted to visit persons in the home. Therefore, in order to prevail, the prosecution must establish beyond a reasonable doubt that a lawful order excluding the defendant from the premises was issued, that the order was communicated to the defendant by a person with authority to make the order and that the defendant defied the order. The primary issue and point of contention of the defense is that the order to leave the property was not a lawful one and that its issuance and enforcement did not comply with due process requirements.
"To satisfy its burden of proof with respect to the element of the crime that a 'lawful order not to enter’ the property [or remain therein] issued, the People must demonstrate that the particular order of exclusion had a legitimate basis and that, considering the nature and use of the subject property, its enforcement did not unlawfully inhibit or circumscribe the *308 defendant from engaging in constitutionally or statutorily protected conduct” (People v Leonard, 62 NY2d 404, 411). In determining the lawfulness of the order, one must consider the reason for its issuance as well as its scope. The scope of an order excluding an individual from a particular area must be reasonably related to the nature of the area involved (People v Nunez, 106 Misc 2d 236). An individual may be excluded from premises and a subsequent conviction for trespass may be had for a violation of an order (People v Licata, 28 NY2d 113). Privately owned premises which provide public accommodations may exclude individuals provided the exclusion is not based upon a violation of a civil right, such as race, color, creed or national origin (Madden v Queens County Jockey Club, 296 NY 249, 253, cert denied 332 US 761).
Accordingly, one may be convicted for mere presence upon the grounds of a department store after a prior order has been given excluding an individual from the premises (Matter of Florette D., 58 Misc 2d 1093). Likewise a conviction for criminal trespass will lie where an individual enters a racetrack after an order to stay out has been issued to him as his status as a licensee has been revoked (People v Licata, supra). The decisions are based primarily upon the fact that the premises are private or quasi-private property.
In connection with public property such as Port Authority Terminal (People v De Clemente, 110 Misc 2d 762; People v Nunez, 106 Misc 2d 236, supra), a State university campus (People v Leonard, 62 NY2d 404, supra) and a social services office building (People v Wolf, 63 Misc 2d 178), courts have been reluctant to find a trespass violation based upon mere presence in violation of an order, absent additional evidence that the defendant engaged in or intended to engage in independent unlawful activity on the premises.
In the court’s view a medical facility such as a private hospital or nursing home is at best a quasi-private facility. It is not "maintained by the public for use by the public on public affairs and business” as categorized in People v Wolf (63 Misc 2d 178, 180, supra). Considering the particular nature and use of such a facility and the responsibility of the administration to insure the health and welfare of the patients therein, the administration should be accorded broad powers and great flexibility in regulating activities, including public access and visitation. The public license to use is not as broad as in the case of an airport terminal, a State university campus or a welfare office. Consequently, a conviction based *309 upon mere presence in violation of an order may be sustained, even though at the time of the defendant’s presence, the defendant did not engage in independent unlawful or disruptive conduct.
Of course, a conviction can only be premised upon a lawful order to exclude. In the court’s view, a private nursing home has broad, although not absolute, authority to act upon the advice and direction of medical personnel in monitoring and restricting the visitation privileges of a patient’s family members, both for the well-being of the patient and the proper and orderly functioning of the institution. In the case at hand, the order restricting the defendant’s visits with her mother to two times per week, made after consultation of the medical and administrative staff at the nursing home, was neither arbitrary nor capricious. Rather, it was based upon sufficient evidence and a genuine concern that Mrs. Marino’s uncurtailed visits would have a detrimental effect upon her mother’s well-being, as well as the well-being of other patients and the proper functioning of the institution. On this issue, in the face of the conflicting testimony of the interested and hostile participants, Mary Marino and Rudy Brunetti, the court finds the testimony of Dr. Joseph Silberstein, the nursing home medical director and Mrs. Brunetti’s private physician, and Mary Edwards, the nursing home administrator, regarding their observations and motivations, to be credible and persuasive. Therefore, the order to exclude given by Mary Edwards to Mrs. Marino after defendant visited her mother in room 305 in violation of the two-time per week visitation restriction was a lawful order not to remain on the premises communicated by an authorized person within the meaning of Penal Law § 140.00 (5). Defendant, by remaining on the premises and refusing to leave, defied this lawful order thereby committing a trespass within the meaning of Penal Law § 140.05.
The court finds that the order was not motivated by a desire to censor Mrs. Marino or otherwise prohibit her from exercising any First Amendment constitutional right. Further, the order was sufficiently clear and precise so that Mrs. Marino was aware of her conduct and the ramifications thereof.
Additionally, there is no merit to defendant’s argument that the order limiting visitation privileges was unlawful and a violation of Fourteenth Amendment due process absent the holding of a hearing prior to its issuance.
The court is mindful that implicit to the concept of liberty *310 protected by the Due Process Clause in the State and Federal Constitutions is a right of privacy. This includes the right of an individual to be free from unjustified and arbitrary intrusions by the State in matters of family life and relationships. However, the court is of the view that defendant’s desire to have unrestricted visitation with her mother at the nursing home does not rise to the level of a fundamental constitutional right, particularly in view of the fact that the nursing home has not totally prohibited visitation, but rather has allowed substantial visitation between mother and daughter of two days per week.
Moreover, a threshold question in any judicial inquiry as to conduct claimed to be violative of the Fourteenth Amendment is whether the State has in some fashion involved itself in what, in another setting, would otherwise be deemed private action. Is there a sufficiently close nexus between the State and the challenged action of a private institution so that the action of the institution may be fairly treated as the State itself? State action has been found where a hospital and medical staff were considering the discontinuance of a life-sustaining measure regarding a terminally ill patient (Matter of Eichner, 73 AD2d 431, mod on other grounds 52 NY2d 363). A lower court has found State action where the private proprietors of an adult care facility were seeking to evict a resident (Campbell v Blum, 110 Misc 2d 678). However, no New York State case has considered the question of whether State action was involved in a nursing home’s attempt to limit a family member from visiting a patient.
In another context, in Fried v Straussman (41 NY2d 376, 379) the Court of Appeals held that the action of a private nursing home in excluding persons did not constitute "State action” so as to require a due process hearing before a person may be excluded from the home. Although the Fried case dealt with an attempt by a nursing home to exclude physicians from the premises, the court is of the view that the rationale with reference to State action applies equally to an order restricting a relative’s visitation privileges. In the court’s view the case at hand is distinguishable from Matter of Eichner (supra) and Campbell v Blum (supra) so that no State action is involved.
In sum, the nursing home’s actions in this case were not arbitrary but rather were based upon a treating physician’s advice aimed at securing the welfare of a patient and securing the objectives of the nursing home institution for the benefit *311 of other patients. The actions were taken only after serious consultation and meetings involving the people in authority at the nursing home. Furthermore, the court notes that the conservator for Mrs. Brunetti approved of the placement of his mother in the nursing home. Any questions with reference to the conservator’s actions should and could have been more properly presented by the defendant in a separate proceeding in the Supreme Court. The court finds the defendant guilty of trespass as a violation. The matter is set down for sentencing on November 7, 1986 at 9:00 a.m.