**William CRIST, Plaintiff,**

v.

**VILLAGE OF LARCHMONT; Chief of Police of the Village of Larchmont; Police Department of the Village of Larchmont; Larchmont Avenue Church; and Andrea Potash, Defendants.**

No. 92 Civ. 0854 (GLG).

United States District Court, S.D. New York.

July 21, 1992.

Clark & Clark by William T. Clark, III, New Rochelle, N.Y., for plaintiff.

Thurm & Heller by Brian S. Sokoloff, New York City, for defendants Village of Larchmont, Chief of Police of Village of

Larchmont, Police Dept. of the Village of Larchmont.

Hogrefe, Stern & King (Harold Kenneth King, Jr., of counsel), New York City, for defendant Andrea Potash.

J. Russel Clume, P.C. (Alfred E. Page, Jr., of counsel), Harrison, N.Y., for defendant Larchmont Ave. Church.

## OPINION

GOETTEL, District Judge.

The public debate over abortion that has marched through our streets, preoccupied our legislatures, and intermittently covered the front pages of our newspapers with images of angry confrontation surfaces now even in the smallest and most genteel of our communities. Once the protestors' shouts have subsided and order has been momentarily restored, courts must often untangle the bitter recriminations and lawsuits left in their wake.

## I. FACTUAL BACKGROUND

Plaintiff William Crist, a retired businessman and resident of the Village of Larchmont, has been a vocal member of the pro-life movement in the Larchmont community. Over the years, Mr. Crist has expressed strong anti-abortion viewpoints in the local press and attained a measure of notoriety for his outspoken positions on abortion.

On the evening of July 1, 1991, the Larchmont Avenue Church, a Presbyterian church located in Larchmont, hosted a meeting concerning abortion and the then recent Supreme Court case of *Rust v. Sullivan*, —— U.S. ——, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). The forum, organized by "Informed Choice," an ad hoc committee, consisted of a panel of scheduled speakers, including the director of Planned Parenthood of Westchester–Rockland, a local Congresswoman, and Dr. Irving Rust, the major litigant in the Supreme Court case, addressing an audience. A newspaper article reporting on the event described it as an "Informed Choice" fund-raiser. The proceeds from the suggested $20 per ticket admission were to benefit Planned Parenthood of Westchester–Rockland and the Westchester Coalition for Legal Abortion.

According to defendants, several Village of Larchmont police officers were assigned to the church that evening to prevent the outbreak of any incidents the emotionally charged issue of abortion might ignite. Plaintiff notes that no officers were posted inside the church during the meeting or outside the entrance.

Plaintiff learned about the fund-raiser in advance from a local newspaper and informed the Mayor that he had a right to present his views on abortion as a member of the panel of speakers. After being told by the church's assistant minister that he could not join the forum panel, plaintiff communicated to the Mayor his intention of asserting this right at the meeting. Crist apparently received no official reply from the Mayor's office.

On the night of the event, plaintiff appeared at the church and asked for the opportunity to present a statement as a panel member. According to plaintiff, he contacted the Police Department and requested the presence of an officer to protect him in a potentially hostile environment. Plaintiff met defendant Andrea Potash, a member of the group "Informed Choice" that organized the fund-raiser, inside the church entrance.

According to Sgt. Kahn, he was summoned to the church by police headquarters at approximately 7:30 p.m. When he arrived, plaintiff was standing in the church doorway demanding the opportunity to express his views as a member of the panel of speakers. According to Sgt. Kahn, Potash refused this request and offered to allow plaintiff to join the audience. Plaintiff refused.[1] According to defendant Potash, plaintiff voiced his intention to dis-

---

1. We note a possible reason for plaintiff's outright refusal to participate in the event as a member of the audience. Plaintiff likely wished to avoid contributing the suggested $20 for admission that was intended to benefit two organizations that espouse positions on abortion with which plaintiff disagrees.

rupt the forum if he was not granted the right to join the speakers' panel.

Defendants also maintain that while Crist remained inside the church doorway, he interfered with the arriving audience. In any event, the argument continued until Potash eventually asked Crist to either join the audience or leave the church premises. Crist refused and was arrested by officer Kahn for trespassing under N.Y. Penal Law § 140.05 and taken to police headquarters. There, plaintiff was charged with trespass on a complaint signed by defendant Potash.

After two court appearances, the case was dismissed when Potash withdrew her complaint. Plaintiff commenced suit on February 4, 1992 pursuant to 42 U.S.C. § 1983 for false arrest in connection with his attempt to exercise his right to free speech at the "Informed Choice" forum. Plaintiff named as defendants the Village of Larchmont, the Larchmont Police Department, its Police Chief, the Larchmont Avenue Church, and Andrea Potash. Defendant Potash later cross-claimed against the Village of Larchmont, its Police Department, and its Police Chief (the "Larchmont defendants") for contribution and indemnity in the case that she is found liable in damages to plaintiff.

An amended complaint was served, identical to the original complaint in all respects except for the addition of paragraph 16 alleging a conversation between Crist and the Mayor prior to plaintiff's arrest. Paragraph 16 states that Crist informed the Mayor of his belief in his right to address the meeting as a panel speaker and his intention assert this right.

Defendants Village of Larchmont, the Police Department, the Police Chief, Andrea Potash, and the Larchmont Avenue Church have moved to dismiss the complaint under Rule 12(b)(6), Fed.R.Civ.P. The Larchmont defendants have also moved to dismiss defendant Potash's cross-claims.

The Larchmont defendants move to dismiss the complaint on three basic grounds. First, as against the Village of Larchmont and its Police Department, defendants argue the complaint must be dismissed because it offers no factual allegations showing the existence of a government policy underlying plaintiff's arrest. Second, as against the Police Chief, they argue that no facts are alleged linking the Chief to plaintiff's arrest. Third, dismissal is warranted because the arrest was lawful as a matter of law and supported by probable cause.

Plaintiff offers two main responses. First, he claims that he has alleged facts, most notably the Mayor's advanced knowledge of his intentions and the subsequent arrest, from which an inference of a governmental policy or, at least, ratification of the officer's actions could be drawn.

Secondly, plaintiff argues that his arrest was unlawful under both New York law and the United States Constitution. The crux of plaintiff's argument is that the church, by opening up its doors for an important public function, must be treated as a quasi-public forum. Thus, unless plaintiff was engaging in unlawful activity—and plaintiff claims he was not—enforcement of trespass laws impermissibly infringed upon the exercise of plaintiff's First Amendment right to free speech.

Defendants Potash and the Larchmont Avenue Church move to dismiss the complaint arguing, *inter alia*, that they cannot be sued under § 1983 because they were never acting under color of state law. Potash and the Church also join their co-defendants in arguing that plaintiff possessed no First Amendment right to join the panel of guest speakers.

## II. DISCUSSION

The court can only grant defendants' motion to dismiss where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Where, as is the case here, the complaint involves a civil rights violation, we apply this stricture with even greater care.

Plaintiff concedes that if his arrest was in fact lawful no § 1983 violation exists.

Plaintiff's Memorandum of Law at 9. Briefly, defendants argue that plaintiff was deprived of no constitutional right to free speech because the church did not represent a quasi-public forum that evening in which plaintiff had a First Amendment right to speak and the warrantless arrest was based upon probable cause.

■ Plaintiff responds that while the church is plainly private property, it was serving as a quasi-public forum on the night he was arrested. For the reasons outlined below, the court concludes that plaintiff's First Amendment right to free speech was not abridged and therefore his arrest for trespass was lawful.

Plaintiff correctly notes that "the more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh v. Alabama*, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946). Further, under New York law:

> a person who enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.

New York Penal Law § 140.00(5).

The central issue becomes to what extent was the Larchmont Avenue Church operating as a public forum on the evening that plaintiff was arrested. The more open the church was to the general public, the greater the First Amendment rights of those attending the event.

A newspaper article supplied by plaintiff described the event as a fund-raiser for Planned Parenthood of Westchester–Rockland and the Westchester Coalition for Legal Abortion that drew approximately 300 women as an audience. Plaintiff's Exhibit C. Members of the local community desiring to attend contributed a suggested $20 as the price for their admission, the proceeds going to the two organizations.

The event was basically a private function, a fund-raiser held in a local church for Planned Parenthood of Westchester–Rockland and the Westchester Coalition for Legal Abortion. While the church does enjoy tax-exempt status [2] and any members of the public could attend (up to the church's legal capacity we presume), it is still difficult to view it as a quasi-public forum in which plaintiff, or any person in attendance, had a right to hop on stage and address the audience as a panel member. That privilege, it seems undisputed, was reserved for the honored guests invited to share their views on abortion and specifically the *Rust v. Sullivan* case.

Plaintiff argues that a quasi-public forum exists "when the public enjoys broad license to utilize certain property." *People v. Leonard*, 62 N.Y.2d 404, 477 N.Y.S.2d 111, 115, 465 N.E.2d 831 (1984). In this situation, "state trespass laws may not be enforced solely to exclude persons from exercising First Amendment or other protected conduct in a manner consistent with the use of the property." *Id.*

This again draws the analysis back to the question of how open the church forum was on the night of the fund-raiser. Members of the general public who chose to

---

**2.** Plaintiff stated to the Mayor and church officials that his right to address the audience derived from the fact that the church's tax exempt status precludes it from engaging in partisan political activities. Plaintiff claimed that his participation in the forum would insure the non-partisan character of the event and protect the legality of the church's sponsorship.

In order to qualify for tax-exempt status under 26 U.S.C. § 501(c)(3), an organization must avoid participating or intervening in "any political campaign on behalf of (or in opposition to) any candidate for public office." There is no

evidence here, however, that the meeting hosted by the church involved a political campaign for any candidates. While one of the guest speakers was a Congresswoman, defendants have offered nothing to suggest that the Church participated in any political campaign, that money raised for the forum was headed into any campaign coffers, or even that speaker was in the midst of a re-election campaign. Indeed, assuming the Congresswoman was planning to run for re-election, that election would have been almost a year and a half away from the evening of the events.

attend possessed no broad license to utilize the church. They were present in the church in order to listen to the invited guests and ask questions at the conclusion of the presentation. Audience members *contributed* money to attend. The speakers were *invited* by the sponsors of the fund-raiser.

If an open microphone was set up for a question-and-answer period at the conclusion of the discussion, plaintiff could participate to the same extent that other audience members could. Or, if the fund-raiser had instead been a town meeting or open-air debate on abortion with a microphone on stage for everyone to share his or her thoughts, plaintiff would certainly retain the same right to address the audience as any other participant.

Plaintiff's demands, however, were different. The means of expression he insisted on exercising was incompatible with the nature of the event. *See Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). Speakers at the fund-raiser were by invitation, the program designed to encourage members of the local community to attend and support financially local abortion rights organizations.

"If the expression is inappropriate for the property or is incompatible with the intended use of the property, then the expression may be totally barred and the property is considered a 'non-forum.'" *Gannett Satellite Inf. Net. v. Metro Transp. Authority,* 745 F.2d 767, 773 (2d Cir.1984) (citing *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46–49, 103 S.Ct. 948, 955–957, 74 L.Ed.2d 794 (1983)). The pro-choice fund-raiser offered those interested the opportunity to listen to a panel of notable guest speakers. It would be anathema to such an event to grant a person admission, free of charge, together with the right to address the contributing participants as a panel speaker simply because he disagreed with the political positions voiced by the invited guests.

Plaintiff surely possessed the same rights and privileges as the rest of the community attending the fund-raiser.

However, neither his firmness of convictions, the severity of his disagreement with the opinions expressed by the slated speakers, nor the political stakes being contested elevate plaintiff's rights to attend and speak any higher than the rights of other audience members. Affording plaintiff a right to speak any greater than the rights of others in attendance would have been totally inappropriate in this context.

For example, nothing would allow a rival political candidate the general right to address the audience at a policy forum at which the President was the keynote speaker simply because issues of political or public import were to be discussed. Likewise, nothing permits plaintiff, or any member of the public wishing to express their views on abortion, whatever those views might be, to do so here. Nothing prevented plaintiff from paying the suggested admission and participating to the extent that other audience members were allowed to participate.

According to Potash, after the three guest speakers concluded their brief speeches, the floor was to opened up for questions. *See* Kahn Affidavit, Exhibit C. Plaintiff was certainly as free to address questions to the speakers as any member of the audience. Plaintiff chose not to participate under these circumstances, instead creating a disturbance at the church entrance, disrupting the ability of others to proceed into the church.

The issue here primarily concerns the means by which plaintiff sought to voice his opinions. Plaintiff clearly has a First Amendment right to express his views on abortion. It is also true that peaceful picketing involves speech protected by the First Amendment. *See U.S. v. Grace,* 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983). The present case, however, differs. Plaintiff was not seeking to picket the fund-raiser at the church, he was insisting on the right to express his views inside the church, on the podium as a member of the panel. However, "the First Amendment does not guarantee the right to communicate one's views at all times and

places or in any manner that may be desired." *Gannett*, 745 F.2d at 772.

Nothing prevented him from expressing his views that evening outside the church as people arrived and departed. Likewise, nothing prevented him from addressing a question to the panel of speakers during the question-and-answer period. If Crist had been refused the opportunity to join the audience and voice his anti-abortion viewpoints as questions to the invited panel because the sponsors wished to restrict expression of his views, this case may have required a different result. Under those circumstances, plaintiff's desired means of expression would not have been so incompatible with the forum that evening. However, this was decidedly not the case here.

■ Plaintiff also argues that enforcement of New York's trespass laws in this case represents content-based regulation of speech. In his view, the Village through its police officers, sought "selectively to shield the public from only some kinds of speech." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975). The decision to selectively refuse plaintiff the right to speak, however, was not made by the Village nor by the police. The organizers of the "Informed Choice" event refused plaintiff's demands to join the scheduled panel. Any content-based decision that was made,

was made by the event's organizers through defendant Potash, a private group.

Further, the arresting officer did not shield the public from anti-abortion viewpoints. Plaintiff was free to voice his opinions openly and publicly, outside the church, or during the question-and-answer period inside the church. The police arrested plaintiff only when he refused to either join the audience peacefully or leave church premises.

We conclude that Crist's demands were incompatible as a matter of law with the extent to which the church was opened up as a forum during the evening of plaintiff's arrest. Refusing to allow Crist to address the audience at a private fund-raiser did not run afoul of the First Amendment or New York law. Event organizers were within their rights to deny Crist from participating on the terms he demanded.[3] His refusal and continued presence on church property could support a valid charge of trespass. *See People v. Marino*, 135 Misc.2d 304, 515 N.Y.S.2d 162, 166 (Just.Ct. 1986).[4]

So long as the arresting officer had probable cause to arrest plaintiff for trespassing, plaintiff can make out no violation of § 1983. Sgt. Kahn observed firsthand the plaintiff on church property and the specific demand that he attend like any other member of the public or leave. Under these circumstances, we have little difficul-

---

**3.** Even were we to hold that plaintiff possessed a First Amendment right to address the forum as a panel member, we would view with marked skepticism the notion that defendant Potash was dressed in the color of state law simply by her invocation of state legal procedures. *See Luger v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 939 n. 21, 102 S.Ct. 2744, 2755 n. 21, 73 L.Ed.2d 482 (1984) ("[A] private party's mere invocation of state legal procedures [does not] constitute 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of state law.").

The only nexus between Potash and the arresting officer alleged is Potash's initial decision to press charges against plaintiff for trespassing and her swearing out of a complaint to that end. Communicating this decision to the arresting officer is a weak case for "heavy involvement" in a joint effort to deprive plaintiff of his First Amendment rights. This hardly establishes the close nexus required to fairly treat private con-

duct as state action. *Cf. Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1981). We would likely dismiss the complaint against her accordingly.

**4.** Plaintiff's citation of *People v. Marino*, 135 Misc.2d 304, 515 N.Y.S.2d 162 (Just.Ct.1986), to support his argument that the church was a quasi-public forum somewhat mischaracterizes this case. The Village of Port Chester Justice Court held that a private nursing home was not a quasi-public forum but rather, at best, a quasi-private facility accorded "broad powers and great flexibility in regulating activities, including public access." *Id.* at 166.

The court upheld the trespass conviction of a person who refused to leave the nursing home premises after being lawfully ordered to do so. Since we hold that plaintiff's First Amendment rights were not violated, his trespass arrest was no less lawful than the trespass conviction in *Marino*.

ty in concluding that probable cause existed.[5]

To conclude, plaintiff's complaint against the Village of Larchmont, the Larchmont Police Department, its Police Chief, Andrea Potash, and the Larchmont Avenue Church is dismissed. Because we grant defendant Potash's motion to dismiss, we need not resolve the motions by the Larchmont defendants to dismiss Potash's cross-claims. Clerk shall enter judgment for the defendants and dismiss the complaint.

SO ORDERED.

---

**5.** The Larchmont defendants alternatively argue that the action against them based upon 42 U.S.C. § 1983 must be dismissed for failure to plead any facts which show that plaintiff's arrest was pursuant to some village policy, custom, or decision officially adopted by a person with final authority. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Plaintiff argues that the trier of fact could infer that a decision was made by a Village official, most likely the Mayor of the small community who knew of plaintiff's plans or the Police Chief who headed the small police force, to arrest Crist if he attempted to address the forum.

To accept plaintiff's argument, a trier of fact would have to draw multiple inferences from scattered circumstantial evidence concerning the size of the Village and its police department and an single conversation between plaintiff and the Mayor. These are slender reeds indeed on which to base a § 1983 claim, and not the firmest of foundations upon which to rest a claim that a governmental policy was at play, or that the Police Chief was personally involved. While we are doubtful that such allegations state a claim against the Larchmont defendants under § 1983, we need not resolve the sufficiency of plaintiff's pleadings given our conclusions regarding his First Amendment rights and the legality of his arrest.