*869 OPINION OF THE COURT
Memorandum.
Judgment of conviction unanimously affirmed.
The evidence showed that defendant was unsuccessful in his attempts to get the New Rochelle Public Library to lift its ban against the playing of cards and board games on its premises. Thereafter, on September 8, 1992, defendant brought a chess board into the library and played chess for approximately two hours with an individual whose name he claimed not to know and whom he referred to as "John Doe.” Said individual left when the senior librarian went into the administrative offices to inquire as to the continuing application of the ban and returned to the table used by the chess players. A guard was summoned to the scene, and then the director of the library with whom defendant had previously exchanged written correspondence concerning the ban, and finally three police officers, but all to no avail. Defendant refused all requests to either put away his chess board or leave the library. Defendant said several times that he was going to get arrested "to make a point.”
The evidence was ample to establish beyond a reasonable doubt that defendant knowingly remained upon premises when not licensed or privileged to do so in violation of the subject provision (Penal Law § 140.05). He lost his license and privilege of remaining in the library when he defied lawful orders not to remain there personally communicated to him by people with the requisite authority (see, Penal Law § 140.00 [5]; People v Leonard, 62 NY2d 404, 408; People v Marino, 135 Misc 2d 304; People v Bembry, 128 Misc 2d 243).
The gist of defendant’s defense at trial was not that the library’s ban on playing board games was unreasonable or invalid. Indeed, it has already been held that a rule requiring library patrons not engaged in reading, studying or using library materials to leave is reasonable and perfectly valid (Kreimer v Bureau of Police, 958 F2d 1242, 1262 [3d Cir 1992]). Defendant’s claim in the case at bar was that he had ceased to play chess as of the moment of his arrest and that his intent was merely to use the chess board in connection with his study of a chess book. We decline to credit this claim, in view of, inter alia, the testimony of the library’s director that defendant neither told her that he was doing research on the game nor denied he was playing chess.
*870 The lawful orders to leave were no less binding on defendant on account of his being given a less onerous alternative, i.e., to put away his chess board. In Crist v Village of Larchmont (797 F Supp 309, 314, affd 9 F3d 1537 [2d Cir 1993]), it was held that a protester had been validly arrested for trespass under Penal Law § 140.05 when he refused to either join an audience peacefully or leave the building. The direction to put away the chess board was, under the circumstances of the instant case, reasonable and lawful since defendant had just used it to violate the library’s rule and since the staff and police would be unduly inconvenienced if he resumed playing with another "John Doe” who observed the board.
There is also sufficient proof to support the trial court’s express finding that defendant had an "agenda” to force the library and police to make an arrest. Defendant candidly described himself as a "fanatic” about chess (cf., People v Chachere, 104 Misc 2d 521) and indicated, within the context of the library’s refusals to change its policy, that he did not like "being asked to cooperate * * * by laying down quietly” (but cf., People v Alamo, 89 Misc 2d 246, 250, wherein the court observed, "The trial of a criminal case is not a chess game”). In light of all of the evidence, he is deemed to have "knowingly” entered or remained unlawfully in the premises (see, Penal Law § 15.05 [2]; § 140.05).
DiPaola, P. J., Collins and Ingrassia, JJ., concur.